STEERE, C. J., and MOORE, WIEST, FELLOWS, STONE, CLARK, and BIRD, JJ., concurred.

---

## MOORE v. BOOTH PUBLISHING CO.

1. LIBEL AND SLANDER—NEWSPAPER ARTICLE—PUBLIC OFFICIALS.
   In considering whether a newspaper article is libelous *per se*, it must be read in its entirety, and the words used must be taken in their plain and natural meaning, and considered in the sense they would be understood by those who read them.

2. SAME—NEWSPAPERS—PRIVILEGE—PUBLIC OFFICIALS.
   While the interests of society require that immunity be granted to newspapers in the discussion of public questions, and that fitting comment and criticism may be indulged in regarding the conduct of public officials, this privilege is limited, and does not extend to protect against false statements, unjust inferences, or imputations of unworthy motives.

3. SAME—LIBELOUS PER SE.
   If the facts and the comment and criticism thereon in a newspaper article, when applied to plaintiff, are of such a nature as tended to blacken his reputation or subject him to public hatred, contempt, or ridicule, their publication is libelous *per se*.

4. SAME—PUBLIC OFFICIALS—NEWSPAPERS.

A newspaper article in effect charging . that the old city government felt a grievance over the result of the election adopting a new form of government, that such grievance affected the judgment of the council in awarding certain public improvement contracts prematurely with the spirit of "getting even," and that said action could "hardly be said to be a creditable monument to their public service," but not charging corruption, official misconduct, dereliction of duty, or that the action was from base, sordid, · or wicked motives, *held*, not libelous *per se*, in an action based thereon by the mayor.

Error to Muskegon; Vanderwerp (John), J. Submitted October 12, 1921. (Docket No. 101.) Decided December 21, 1921.

Case by John H. Moore against the Booth Publishing Company for libel. From an order granting a motion to dismiss, plaintiff brings error   Affirmed.

*Richard L. Newnham* (*Charles B. Cross*, of counsel), for appellant.

*Stephen H. Clink* and *Charles E. Ward*, for appellee.

SHARPE, J.   The defendant publishes a newspaper in the city of Muskegon, called the Muskegon Chronicle.   In its issue of April 19, 1920, the following appeared:

## "THE PRICE WE PAY.

"The latest developments regarding the Western avenue sewer make it all the more evident that the city of Muskegon is bound to pay a, big price for the situation that arose in the city during the closing months of the old administration.   The street car riot of August 5th and the general ineptitude with which the whole street railway situation   has   been handled, had created a strained situation between them as of the people and the city government and this was increased by the proceedings that were brought against the city officials for their failure to control the riot.

Then the adoption of the new charter, which would automatically terminate the tenure of office of the old government on January 1st, was openly opposed by a few of the members of the old administration and the overwhelming majority by the people was accepted by some of the old officials as a sort of reflection on them.

"Thereupon the old government, in a spirit that appeared to have much of the element of 'getting even,' began rushing through these public improvement contracts, over the protest of the incoming commissioners who would have the problem of paying for and supervising the actual construction work on these improvements to face, and who also wanted to make a comprehensive survey of the whole situation before entering upon any more improvements, so that all might be made to conform to a well defined city plan. Knowledge which became public at about that time, that some of the administration officers of the old government would not be retained under the new regime, added fuel to the flames of opposition, with the result that the protests of the commissioners were ignored, the contracts were rushed through and awarded, despite the refusal of the city recorder, who was to be city clerk under the new regime, to sign them, and apparently the city is 'stuck.'

"We find ourselves with a contract on our hands for a sewer of doubtful utility, one that is wrongly designed and that will not fit into the general plan for a comprehensive sewer system that the new government is working out. It will be a partial waste of over one hundred thousand dollars of the city's money, and the city has no money to waste in its present financial situation.

"The situation is deplorable, and while it might have been under more fortunate circumstances, the fact that the men who were at the helm during the dying days of the old form of government let personal grievances toward the people of the city so far affect their judgment as to plunge the city into the present plight, can hardly be said to be a creditable monument to their public service."

The declaration is for libel. It alleges that the plaintiff was the mayor of the city and as such a mem-

ber of the common council during the year preceding the 1st day of January, 1920, that the above publication was made by the defendant—

"wickedly and maliciously intending to deprive this plaintiff of his good name, fame and credit, and to bring him into disrepute, infamy and discredit, and to hold him up as a person who would be guilty of official misconduct for the purpose of revenge and to get even because the said city of Muskegon had changed its form of government, and for the purpose of exposing this plaintiff to public hatred, contempt and ridicule,"—

that the results indicated by such purpose and intent of defendant followed and that plaintiff has suffered, etc., and has been greatly injured thereby.

The defendant, after pleading the general issue, moved to dismiss the suit for the following and other reasons:

"*First.* That no cause of action is stated or set out in the plaintiff's declaration.

"*Second.* Because the article complained of in the plaintiff's declaration is not libelous *per se.*"

The motion was granted and the cause dismissed, the court holding that the article was not libelous *per se,* and, as no special damage was claimed, the declaration failed to state a cause of action.

It is elemental that, in considering whether the article is libelous *per se,* it must be read in its entirety, and the words used must be taken in their plain and natural meaning, and considered in the sense they would be understood by those who read them. While the interests of society require that immunity be granted to newspapers in the discussion of public questions and that fitting comment and criticism may be indulged in regarding the conduct of public officials, this privilege is limited and does not extend to pro-

tect against false statements, unjust inferences, or imputations of unworthy motives.

In this, as in all such publications, there are certain facts stated which form the basis of the comment or criticism indulged in. If these facts and the comment and criticism thereon, when applied to plaintiff, are of such a nature as tended to blacken his reputation or subject him to public hatred, contempt or ridicule, their publication is libelous *per se.* The facts stated, when separated from the rest of the article, are:

1.  That, owing to the situation that arose during the closing months of the old administration, the city will lose a considerable sum of money.
2.  That such loss is due to the old government rushing through contracts for public improvements over the protest of the incoming commissioners and before a comprehensive survey of the whole situation regarding such improvements had been made.
3.  That the members of the old council permitted their judgment to be affected by their personal grievances, due to the fact that the new charter had been adopted notwithstanding their opposition to it and the further fact that it was apparent some of the old officials would not be retained in office by the "new regime."

Particularly applying these charges to plaintiff, of what do they accuse him? With permitting a grievance said to have been caused by the result of the election to affect his judgment in awarding certain public improvement contracts prematurely. There is no charge that he acted corruptly, that he was guilty of official misconduct, of dereliction of duty, or that he acted from base, sordid or wicked motives. There is not the slightest suggestion that the plaintiff or any member of the old government made or intended to make any gain or profit to themselves by their official action. There is no charge that plaintiff did

not exercise his best judgment in the discharge of his official duties. The charge simply is that the grievance he felt affected his judgment in passing upon the questions before him for determination. To say that the plaintiff as mayor of the city felt a grievance over the result of the election was no libel. Many defeated candidates for office are not "good losers." And supporters of defeated candidates and those opposed to charter provisions adopted by a vote of the electors feel the disappointment no less keenly.

Neither do we think it libelous *per se* to say that the grievance felt by an official, due to such a disappointment, has affected his judgment in the discharge of his public duties, unless coupled with a charge of corruption, misconduct, dereliction of duty, or an imputation of sordid motive. The judgments of all men are more or less affected by their business or social associations, environments, manner of living or events in their lives which have left lasting impressions on their minds. To so say is no reflection upon their personal integrity. It is simply calling attention to a human weakness which they have been unable to overcome.

The criticism or comment indulged in was but an expression of the opinion of the writer that the action complained of appeared to have much the element of "getting even" with the people of the city for their treatment of the outgoing officials at the election and could "hardly be said to be a creditable monument to their public service." When considered in connection with the charges on which it was founded, it was but, in effect, saying that the members of the old council determined that the vote of the people should not prevent them from carrying out the plans for public improvements which they had formulated and that, notwithstanding such vote, they had gone on with the work as contemplated by them; that they did not ac-

cept the result of the vote as a mandate to them to delay the work begun or to consult the newly-elected officials relative to the improvements to be made.   By so doing they had shown the people of the city that while yet in office they would exercise their official power and authority until their terms expired.   There is no suggestion that they exceeded their power or did any unlawful act.   We do not think this can fairly be said to state that plaintiff thereby betrayed his trust as a public official for the purpose of "getting even" with the people of the city because of his disappointment over the result of the election.

We feel constrained to agree with the trial court in holding that the article, taken as a whole, is not libelous *per se.*

The judgment is affirmed.

STEERE, C. J., and MOORE, WIEST, FELLOWS, STONE, CLARK, and BIRD, JJ., concurred.