PFEIFFER *v.* HAINES.

1. LIBEL AND SLANDER—PAID POLITICAL ADVERTISEMENTS—QUALIFIED PRIVILEGE.
    Paid political advertisements, alleged to be libelous, and published incident to municipal campaigns preceding recall and general elections of five members of city commission *held,* qualifiedly privileged.

2. SAME—PUBLICATION LIBELOUS PER SE—SPECIAL DAMAGE.
    When a publication is libelous per se, plaintiff's right of recovery is not dependent on proof of special damages.

3. SAME—QUALIFIED PRIVILEGE—MALICE—BURDEN OF PROOF.
    In an action for libel arising from newspaper articles that were qualifiedly privileged, the plaintiff had the burden of proving both falsity and malice even though the words were actionable per se.

4. SAME—MALICE—QUALIFIED PRIVILEGE.
    Rule that if a libelous statement is actionable per se, the plaintiff is not required to prove malice, does not apply where publication is qualifiedly privileged.

Truth as a defense to action based on a defamatory statement, see 3 Restatement, Torts, § 582.

Criticism of public officer's activities of public concern, are privileged, see 3 Restatment, Torts, § 606.

5. SAME—INSTRUCTIONS.

In passing upon lengthy charge of court in action for libel, where charge contains some inaccurate and possibly inconsistent statements of the law, the controlling consideration is whether the charge, taken as a whole, misled the jury to the prejudice of plaintiff and resulted in his not having had a fair trial.

6. SAME—INSTRUCTIONS—PREJUDICE.

Instructions in libel case *held*, not to contain prejudicial error to plaintiff, the appellant, where although there were obvious incorrect statements of the law, such statements were more favorable to plaintiff than he was entitled to have made or referred to matters jury found it unnecessary to pass upon.

7. SAME—TRUTH—EVIDENCE.

Since defendant in action of libel is entitled to prove that publication was true, it was not error to admit entire transcript of testimony taken at hearing by city commission on removal of city manager, even though some of the transcript might have been quite immaterial and irrelevant, where objection was raised as to introduction of transcript as a whole and an alleged libelous article upon which plaintiff relied stated transcript of such "comic opera trial" required 130 typewritten pages.

8. SAME—QUALIFIED PRIVILEGE—TRUTH—MALICE.

Where it is a fair inference that in action for libel the jury either found the qualifiedly privilege newspaper publications relied on were true in fact or were prompted by proper motives and not by malice on part of defendant, recovery was properly denied plaintiff.

Appeal from St. Joseph; Jacobs (Theo T.), J. Submitted January 16, 1948.. (Docket No. 92, Calendar No. 43,922.)   Decided February 16, 1948.

Case by Robert Pfeiffer against Mark P. Haines for libel.   Verdict and judgment for defendant. Plaintiff appeals.   Affirmed.        ·

*Cobb & Neilsen* (*G. Randall Price,* of counsel), for plaintiff.

*Raymond H. Dresser,* for defendant.

NORTH, J.   This is an action for libel brought by
Robert Pfeiffer against Mark P. Haines, the owner
and publisher of the Sturgis Daily Journal.   De-
fendant admitted that the four alleged libelous ar-
ticles were published in his paper on various dates
between February 29, 1944 and April 1, 1944.   The
portions of the articles·set forth in plaintiff's dec-
laration are printed in the accompanying footnote.*

---

* "February 29, 1944, The Sturgis Daily Journal, Page 3

" 'WHY A RECALL ELECTION NOW?

" 'The question has been asked—"WHY HOLD A RECALL ELECTION
AT THIS TIME?   COULDN'T THE SAME PURPOSES BE ACCOMPLISHED AT
THE REGULAR CITY ELECTION IN· APRIL?"

" 'That's a fair question and deserves a frank answer.   Here are
the facts:

" 'Four of the five commissioners whose removal is sought would
not come up for election this year. 'Except by recall procedure, they
could not have been removed from their offices until April, 1945.   In
the regular city election this clique would have had to win only one
commissioner from one of the four wards, or the commissioner at
large, to have continued to dominate the city administration for an-
other year.   That is too big a hazard to take.   Another year of the
present comic opera administration would have had a disastrous ef-
fect on public morale.   Without doubt it would have entrenched itself
as a minor league political machine with many of the characteristics
of Mayor Hague's outfit in New Jersey.   *   *   *

" 'The attention of the city attorney was called to the fact that
the city charter states in very lucid English that no technicalities in
a petition shall invalidate a recall election, but that point was ignored
as have 'been many other provisions of the city charter in the past
few months.   *   *   *

" 'The recall machinery provided by the City charter is the only
means that citizens have of removing incompetent and discredited
public officials before their terms expire.' "

---

"March 1, 1944, The Sturgis Daily Journal, Page 2

" 'THE COMIC OPERA TRIAL

" 'On December 8, 1943, the present city commission held a meet-
ing to conduct proceedings for the removal of Raymond J. Greenberg
as city manager.

" 'The hearing turned out to be a comedy of errors, but the big-
gest error was the failure of the commission to rent the high school
auditorium and charge admission.   The "trial" was like something
out of Gilbert and Sullivan.   With a few hit tunes it might have
become a smash hit like "Oklahoma".   The show would have yielded
a tidy sum for the Red Cross or some war activity, to say nothing
of the motion picture rights.

In a large measure the defense consists of the claim that the articles were true in fact, but among other phases of the defense it is urged that the publications were qualifiedly privileged and without malice. The case was tried before a jury which rendered a verdict in favor of defendant and judgment was entered thereon. Plaintiff has appealed.

Plaintiff was a member of the Sturgis city commission, composed of 9 members. In a general way the alleged libelous articles were criticisms of the official conduct of five of the commissioners. The articles were not directed at plaintiff individually,

" 'The city attorney, representing the commission and Mr. Kim. Sigler, who had been retained by Mr. Greenberg, had to make up their own rules of procedure. There was no legal precedent covering procedure and it was admitted by the city attorney that there were no provisions in the city charter authorizing such a hearing. In intent and effect it had no more legality than a Gallup poll. * * *

" 'Despite the obvious illegality of the proceedings they were continued and the testimony taken required 130 typewritten pages to transcribe. * * *

" 'No one contends that the city manager is frozen in his job for life. The city commission has the authority to hire and fire a manager under certain conditions prescribed by the city charter. The present city commission did not observe those conditions.

" 'If there is any merit in the city-manager plan it lies in the very fact that he is free from political pressure. When commissioners begin to interfere with the city manager and go over his head in hiring and firing employees his usefulness is ended and efficiency goes out the window.' "

"March 31, 1944, The Sturgis Daily Journal, Page 2

" 'Something to Think About

" 'Sturgis has a chance to free itself next Monday from a nasty political set-up that threatens the future peace and welfare of this City.' "

"April 1, 1944, The Sturgis Daily Journal, Page 3

" 'Now Let's Finish the Job

" 'How many other loyal, long-term city employees will be forced to walk the plank to make room for the hangers-on of the present administration? * * *

" 'The present commission has already nullified provisions of the city charter to get control of city jobs for their henchmen. If they are returned to power the charter will be as worthless as a "scrap of paper".' "

but rather at the group consisting of the five members. Public sentiment reached the point that a special recall election was petitioned, and such an election was held March 7, 1944. At that election plaintiff's defeat resulted in terminating his official position as a city commissioner. He was a candidate for the office of city commissioner at the general election held in April, 1944, at which election he was again defeated. The alleged libelous articles were obviously published incident to the respective municipal campaigns preceding the recall election and the general election. In fact, the four publications upon which plaintiff relies were paid political advertisements, so designated in the publications, and were signed by "Sturgis Good Government League, D. G. Hopkins, Chairman." These alleged libelous publications were obviously qualifiedly privileged.

Two of the three questions prefacing appellant's brief present questions of law, which can be passed upon without further reference to the subject matter of the alleged libelous publications. The first of these two questions is stated in appellant's brief as follows:

"Is the plaintiff required to prove malice when the nature of the alleged libelous statements shows that they are actionable per se?"

Appellant's contention is not tenable wherein he asserts the trial judge erred in his holding that since the publications were qualifiedly privileged, plaintiff as to malice had the burden of proof. In this respect appellant relies upon *Moore* v. *Booth Publishing Co.,* 216 Mich. 653, and quotes therefrom the following:

"In this, as in all such publications, there are certain facts stated which form the basis of the comment or criticism indulged in. If these facts

and the comment and criticism thereon, when applied to plaintiff, are of such a nature as tended to blacken his reputation or subject him to public hatred, contempt or ridicule, their publication is libelous per se."

The quoted context does not state a rule as to the burden of proving malice. Instead it merely states that a publication of the designated character "is libelous per se." In such an event plaintiff's right of recovery is not dependent on proof of special damages. The decision in the cited case affords plaintiff herein no support. Notwithstanding the alleged libelous publication in the cited case was very much of the same character as that in the instant suit, the trial court, on defendant's motion, dismissed plaintiff's suit, and such dismissal was affirmed in this Court. We there said:

"The motion was granted and the cause dismissed, the court holding that the article was not libelous per se, and, as no special damage was claimed, the declaration failed to state a cause of action."

The trial court correctly charged the jury that plaintiff had the burden of proving malice. He did not charge that the alleged libelous publications did not in themselves constitute evidence of malice. Instead the alleged libelous articles were submitted to the jury, and the court charged:

"In determining whether the articles were malicious * * * you may also consider the character of the articles, the nature of the charges, and the prominence which was given to them in the paper, and whether or not they were published in good faith. * * *

"You have a right to look to all the circumstances surrounding the case as testified or disclosed by the evidence in the case in order to determine whether or not defendant acted in bad faith and with malice."

The rule asserted by appellant that if the libelous statements are actionable per se, the plaintiff is not required to prove malice, does not apply to a libel case wherein, as in this instance, the publication is qualifiedly privileged. We have so held in several cases.

In one of such cases wherein the publication was qualifiedly privileged, Justice CAMPBELL, writing for the Court, said:

"Where a communication is privileged, the plaintiff can not recover without proving affirmatively not only the falsehood of its contents, but also that it was published with express malice. Unless he can prove both of these points he must fail." *Edwards v. Chandler,* 14 Mich. 471, 475 (90 Am. Dec. 249).

The above holding was quoted with approval in *Trimble* v. *Morrish,* 152 Mich. 624, 628 (16 L. R. A. [N. S.] 1017) ; and, also, in *Everest* v. *McKenny,* 195 Mich. 649 (L. R. A. 1917 D, 779), wherein plaintiff alleged the defendant had in effect falsely said: "The plaintiff was immoral, unchaste, a woman of loose habits." A like holding was announced in *Konkle* v. *Haven,* 140 Mich. 472. A headnote reads:

"A letter derogatory of the character of a clergyman, written by a member of his congregation to the elders of a church of which he was about to assume charge, was quasi privileged, and in order to support recovery therefor plaintiff must show both the falsity of the charge and malice."

A very large number of decisions are cited in the article on libel and slander in American Jurisprudence in support of its statement of the law, as follows: "In the case of communications which are known as qualifiedly privileged, the plaintiff cannot recover unless express malice, or malice in fact, is shown. In other words, the law recognizes circum-

stances in which malice should not be imputed.''
33 Am. Jur. p. 115.

In the very recent libel case of *Bostetter v. Kirsch
Co.,* 319 Mich. 547, we cited many supporting author-
ities and affirmed the following in the circuit judge's
charge:

" 'I charge you, members of the jury, that because
the article so published by the defendant in this case
was qualifiedly privileged, the burden of proof is
upon the plaintiff to prove to you by a fair prepon-
derance of the evidence, two things: First, That
the charges so made were untrue and false; Second,
That the defendant made the publication with actual
malice toward the plaintiff.' ''

From the foregoing the law seems well settled that
in a suit wherein the alleged libelous publication is
qualifiedly privileged the plaintiff has the burden of
proving both falsity and malice even though the
libelous words are actionable per se. The trial
judge was not in error in holding that plaintiff in
the instant case, as a condition of recovering, was
required to prove malice. That question was sub-
mitted to the jury as an issue of fact.

Appellant's brief presents the following question:

"Were the instructions given to the jury so con-
flicting and inconsistent that the jury could not have
arrived at a correct result by following all of the
instructions given by the court?"

It may be conceded, as appellant points out in
his brief, that the lengthy charge of the court con-
tains some inaccurate and possibly inconsistent
statements of the law, but it does not follow that in
consequence thereof plaintiff is entitled to a reversal
and a new trial. Instead, the controlling considera-
tion is whether the charge of the court, taken as a
whole, misled the jury to the prejudice of plaintiff
and resulted in his not having had a fair trial.

In his brief appellant selects certain more or less disconnected portions of the charge and insists that they cannot be reconciled one with another. In the first of these selected portions the court seems to have charged the jury that notwithstanding the alleged libelous publications were qualifiedly privileged, if they were "false or aspersive to plaintiff's character as a public official, the defendant is liable therefor, however good his motives," which would eliminate proof of malice as an essential element of plaintiff's case. But in other portions of his charge the trial court made it plain to the jury that under the circumstances of this case the alleged libelous publications must have not only been false but plaintiff must show they were made with malice. While in the foregoing there is obviously some inconsistency, nonetheless plaintiff may not be heard to complain because the departure from the strict letter of the law was favorable to him rather than being prejudicial.

Appellant complains of the following statement in the charge of the court: "I charge you in this connection that if true, *and* without malice, it would not be libelous." Obviously the error in the quoted statement of which appellant seems to complain is that the word "and" might better have been "or". However, here again the error or irregularity was one of which appellant may not complain because the charge as given was more favorable to him than it would have been if stated with technical accuracy. In commenting on another statement of like character in the charge of the court, appellant says:

"This would lead the jury to believe that even a true statement if made with malice or in bad faith is actionable. This, of course, is absurd."

It is difficult to understand how plaintiff could claim error in consequence of these portions of the

court's charge which were unduly favorable to plaintiff and unfavorable to defendant. Other portions of the charge concerning which appellant complains pertained to the rule of damages in case the jury found in favor of plaintiff. But since the jury found for defendant, it is obvious that plaintiff was not prejudiced by the part of the charge referring to damages, which the jury would have had occasion to consider only in the event plaintiff recovered.

Careful review of the lengthy charge given to the jury brings the conclusion that, notwithstanding there may have been some technical errors and some inconsistent or conflicting statements, nonetheless plaintiff was not prejudiced thereby.

The remaining question presented in appellant's brief is as follows:

"Did the lower court err in permitting 130 pages of transcript of testimony in another proceeding, including the arguments of counsel on legal points, and the observations of the reporter, to be admitted in evidence over the objection that the same was hearsay?"

It should be noted that appellant's objection to its admission in evidence pertains to the whole of such transcript rather than to any particular part thereof. This transcribed testimony was taken at a hearing before the city commission which involved the removal from office of the Sturgis city manager. The transcript was admitted in evidence by the trial court on the theory that it was competent and relevant to meet that portion of plaintiff's case set up in his declaration, which we quote in part:

"March 1, 1944, The Sturgis Daily Journal, Page 2

" 'THE COMIC OPERA TRIAL'

" 'On December 8, 1943, the present city commission held a meeting to conduct proceedings for the

removal of Raymond J. Greenberg as city manager.

" 'The hearing turned out to be a comedy of errors, but the biggest error was the failure of the commission to rent the high school auditorium and charge admission.     *     *     *

" 'Despite the obvious illegality of the proceedings they were continued and the testimony taken required 130 typewritten pages to transcribe.' "

Plaintiff offered and there was received in evidence the publication of defendant's paper in which the above quoted matter was contained. In meeting this phase of plaintiff's case, defendant evidently took the position that the publication was justified as a reasonable and truthful description of the manner in which the proceedings progressed before the city commission. It was to sustain his position in this regard that defendant offered in evidence the transcript of the proceedings. It obviously was relevant and competent for that purpose. In view of plaintiff's pleading and proofs in the particulars just above noted, defendant clearly was justified in putting before the jury the details of the manner in which the hearing before the city commission was conducted. Under very similar circumstances we said in *Bostetter* v. *Kirsch Co., supra* (p. 555):

"Defendant was entitled to plead and to prove the facts on which it relied in support of its claim that the article, as published, was true."

It may be presumed that some portions of the transcript which were received in evidence might have been quite immaterial and irrelevant; but nonetheless that circumstance cannot now be urged in behalf of plaintiff whose objection to the admissibility of the transcript was made only as to the whole thereof. The objection was properly overruled.

On consideration of this appeal we do not find reversible error. From the record as a whole it is a fair inference that as to the major portion of the alleged libelous publications the jury found them true in fact; and as to any other portions that the publications were prompted by proper motives, and not by malice on the part of defendant. If so plaintiff could not recover. The judgment entered in the circuit court is affirmed, with costs to appellee.

Bushnell, C. J., and Sharpe, Boyles, Reid, Dethmers, Butzel, and Carr, JJ., concurred.