MISSOURI & NORTH ARKANSAS RAILROAD COMPANY v. CLAYTON.

Opinion delivered January 23, 1911.

1. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE.—To constitute contributory negligence sufficient to defeat a recovery, it is essential that the act of the injured person which contributed to the injury was of itself negligent. (Page 352.)

2. SAME—TEST.—The test of negligence in any given case is not what a prudent man would generally do, but what he would do under similar circumstances to avoid injury. (Page 352.)

3. SAME—WHEN CONTRIBUTORY NEGLIGENCE FOR JURY.—Where the situation disclosed by the testimony is one from which different minds might draw different conclusions as to whether under the particular circumstances the plaintiff was guilty of contributory negligence, the question is properly one of fact for the jury to determine. (Page 352.)

4.  Master and servant—negligence—evidence.—In an action for injuries to an employee in re-railing a car, testimony of employees who had frequently been engaged in re-railing cars with a similar replacer that it was safe to place the foot against its outer side to steady it was admissible as tending to show that the plaintiff did not fail in due care in putting his foot against the replacer. (Page 353.)

5.  Same—contributory negligence.—Where there was evidence that it was customary and safe for an employee working with a replacer to rerail a car to put his foot on the replacer to steady it as the car was drawn upon it, it was a question for the jury whether plaintiff was negligent in putting his foot on the replacer under such circumstances. (Page 553.)

Appeal from Benton Circuit Court; *J. S. Maples*, Judge; affirmed.

*W. B. Smith* and *J. Merrick Moore*, for appellant.

The act of the appellee in placing his foot on the rerailer was the direct proximate cause of the injury, and all the facts and circumstances, as well as the admissions of appellee and his knowledge of the hazard attending the work, go to make out a clear case of contributory negligence *per se* on his part, in unnecessarily placing his foot on the rerailer; and this negligence bars recovery, even if it be conceded that the air was not working properly and that appellant was negligent in that respect. 77 Ark. 367; 86 Ark. 65, 68.

While ordinarily the question of contributory negligence is one of fact for the jury, yet where, as in this case, the undisputed facts are such as that only one conclusion can reasonably be reached, it becomes a question of law. 61 Ark. 555; 91 Ark. 86. No emergency existed calling for such rapidity and promptness of action as to absolve appellee from the duty to act under the circumstances as a reasonable prudent man should act. 82 Ark. 11; 90 Ark. 387. The danger in this case was so obvious that appellee was bound to take notice thereof, and he will not only be deemed to have assumed the risk incident to his act, but also to have been guilty of contributory negligence. 85 Ark. 460. See also 83 Ark. 567; *Id.* 600; 66 Ark. 237; 1 White, Personal Injuries on Railroads, § 410; 90 Ark. 210; 86 Ark. 68.

*Festus O. Butt*, for appellee.

While the evidence is conflicting as to whether the replacer could be successfully used in any way except by steadying it

with the foot, yet there is evidence tending to show that such a method was the necessary one, and that it was the common custom, which, in the experience of the witness testifying, had resulted in injury to no one until appellee was injured. The testimony is that the placing of the replacer in the manner indicated is relatively free from danger. It was therefore not necessarily imprudent in the appellee to steady with his foot a replacer was placed. At any rate, he could not under these facts be declared negligent as a matter of law, but it was a question for the jury. 117 S. W. 570.

FRAUENTHAL, J. This was an action instituted by I. G. Clayton, the plaintiff below, against the Missouri & North Arkansas Railroad Company to recover damages for a personal injury which he sustained on account, as he alleged, of the negligence of the defendant. The plaintiff was a conductor on one of defendant's freight trains running from Eureka Springs to Leslie, and, while engaged in the performance of his duty in attempting to re-rail a derailed box car at a point on the line of railroad known as Baker's Switch, his left foot was caught beneath the replacer and so severely crushed and injured that it necessitated the amputation of the foot and the lower portion of the leg. It was alleged that the negligence of the defendant consisted in a failure upon its part to exercise ordinary and reasonable care in providing safe appliances for stopping the train; it was claimed that the air pump upon the train was so defective that it would not work, and on this account would not apply the air properly to the brakes so as to promptly stop the train, and that this defective condition of the appliances on the train was known at the time to the defendant and unknown to the plaintiff. The defendant denied the acts of negligence complained of on its part, and pleaded plaintiff's alleged contributory negligence as a bar to his recovery, and also alleged that the injury was the result of an accident the risk of which was an incident of his employment and assumed by him. Upon a trial of the case in the lower court a verdict was returned in favor of the plaintiff, and from the judgment entered thereon the defendant has appealed to this court. The sole assignment of error which is now pressed upon us on this appeal, and the sole ground that is urged by the defendant's counsel why this judg-

ment should be reversed, is that the undisputed evidence shows that plaintiff was guilty of negligence which contributed to the cause of the injury he sustained. Briefly stated, the case is this: The plaintiff was in the employ of the defendant as a conductor, and was on the date of the injury engaged in running a freight train from Eureka Springs to Leslie. He received orders from his superior directing him to take two cars from the side track at Baker's Switch and carry same on to Leslie. When the train arrived at Baker's Switch the engine was backed upon the side track, and was pushing four cars on this side track back to the two cars which were to be taken up. The rear car of these four cars was a large box car, and its rear wheels were derailed while it was being pushed back upon the side track and thus ran along the ties for a distance of about 30 feet. The plaintiff in the due performance of his duties proceeded with the assistance of a brakeman to replace the wheels of this car back on the rails. The trucks on the east side of this car were on the outside of the rail and on the end of the ties, and on the west side thereof they were between the rails. The plaintiff was engaged with a replacer in rerailing the wheels on the east side, and the brakeman was assisting in replacing those on the west side of the car. On account of the situation the plaintiff was compelled to communicate all signals for the engineer to the brakeman who then gave the signals to the engineer. The wheels of the car were replaced upon the rails by means of an appliance known as a replacer. This was a large piece of steel or iron which was placed upon the ties next to the rail and with one end just under the derailed wheel in the fore part of the rear truck. The appliance was so constructed that when the car was pulled forward the derailed wheel would mount upon the replacer, and upon reaching a point level with the rail would then slide from the replacer on to the rail.

It appears from the testimony that the replacer furnished to plaintiff on this occasion was not so constructed that it could be spiked or securely fastened to the ties so that it would remain firmly fixed as the derailed wheel mounted it, but it was placed loosely on the ties so that when the wheel of the car started to mount it it would sometimes lose its equilibrium and be thrown to one side, causing the wheel to slip from it and between it

and the rail. The testimony on the part of the plaintiff tended to show that on this account it was the custom for one working with this replacer to put the foot against the outside thereof in order to steady it and keep it in proper position as the wheel first pressed against it in mounting it. On this occasion the plaintiff put the replacer upon the ties with its end properly placed upon the ties and a few inches from the space between it and the next tie, and placed his foot against its outer side in order to steady it, and the signal was given to the engineer to pull the car forward. When the front wheel of the back truck struck the end of the replacer, either because the ties moved and bunched on account of the lack of proper ballast or for other reason, the wheel failed to mount the replacer, but slipped from it on to the tie between it and the rail, and threw the back end of the replacer upward and outward, striking the plaintiff's leg and knocking him down and catching his foot beneath it. At the instant that the front wheel of the back truck struck the replacer and deflected it, the plaintiff quickly removed his foot and promptly gave the signal to the brakeman to stop the train, who promptly forwarded the signal to the engineer, and the plaintiff endeavored to extricate himself. But the train did not stop, but moved on about from six to eight feet, and the rear wheel of the back truck mounted the replacer and crushed the plaintiff's foot beneath it. The testimony on the part of the plaintiff tended to prove that the signal to stop the train was promptly communicated to the engineer, and that the train was not promptly stopped because the air pump was defective, and did not properly work so as to set the brakes; that if the air pump had been in proper working condition the train could have been stopped within a distance of two feet after the stop signal had been given, and before the rear wheel of the back truck had mounted the replacer. Upon an examination of all the testimony as to the situation and circumstances at the the time of the injury, we are of the opinion that there was sufficient evidence to warrant the jury in finding that the proximate cause of the injury was the failure to promptly stop the train due to the negligence of the defendant in failing to exercise reasonable care in having a safe air pump on its train; and this is conceded by counsel for defendant upon this appeal, who now only contend

that the judgment should be reversed on the ground that the un-disputed testimony shows that plaintiff was guilty of contributory negligence barring him from recovery.

It is urged by the defendant that the plaintiff was guilty of contributory negligence as a matter of law by reason of plac-ing his foot against the replacer, which bars him from a recovery for the injury sustained by him. But, under the testimony adduced upon the trial of this case, we think that this was a question of fact which under the circumstances of this case it was the province of the jury to determine, and not a question of law for the court to decide. In order to constitute contrib-utory negligence sufficient to defeat a recovery, it is essential that the act of the injured person be itself one of negligence. It is not sufficient that the act may have contributed to the injury, but it is necessary that the injured person's negligence contributed to cause it, before he will be defeated of a recovery. Now, the test of whether or not one is guilty of negligence in any given case is not what a prudent man would generally do, but the test is what a man of ordinary care and prudence would do under similiar circumstances. Each case must necessarily be determined by its own facts and circumstances. If the situa-tion disclosed by the testimony is one from which different minds might draw different conclusions as to whether or not under the circumstances of the particular case the injured person was guilty of negligence, then the question is properly one of fact for the jury to determine.

It has been held by this court that it is not negligence *per se* for a brakeman to go in between moving cars to couple them together. That may be a dangerous act for one to do, and it may be that many prudent men would not do the act. But, though such an act is dangerous, still if, under the circum-stances of the case, a man of ordinary care and prudence would do the act, and as a matter of fact men of ordinary care and prudence do perform such acts, then it becomes a question of fact for a jury to decide as to whether or not such act under such circumstances is negligent. *Choctaw O. & G. Rd. Co.* v. *Thompson,* 82 Ark. 11; *Kansas City So. Ry. Co.* v. *Henrie,* 87 Ark. 443.

In the case of *Narramore* v. *Cleveland, etc., Ry. Co.,* 37

C. C. A. 499, the principle was thus expressed by Judge Taft: "But where the danger, though present and appreciated, is one which many men are in the habit of assuming, and which prudent men who must earn a living are willing to assume for extra compensation, one who assumes the risk cannot be said to be guilty of negligence if, having in view the risk assumed, he uses care reasonably commensurate with the risk to avoid injurious consequences." *St. Louis, I. M. & S. Ry. Co.* v. *York,* 92 Ark. 554.

In the case at bar the testimony on the part of the plaintiff tended to prove that it was almost the customary method in steadying the replacer to put the foot against its outer side as the wheel first touched it at its end. Employees of the defendant who had been engaged upon numerous occasions in rerailing cars with a replacer such as was used in this case testified that it was safe to place the foot against it in order to steady it, and that this had been done by them numbers of times and without injury. Such evidence was admissible as tending to show that the plaintiff did not fail to exercise due care by putting his foot against the replacer. 29 Cyc. 517.

And, under the circumstances of this case, we think that it was a question of fact for the jury to say whether or not the plaintiff was guilty of negligence in putting his foot against the replacer in order to steady it and whether or not he exercised due care thereafter. The question was submitted to the jury under proper instructions, and we cannot say that the undisputed evidence shows that their verdict is contrary to those instructions.

The judgment is accordingly affirmed.