[File No. 7042]

STATE OF NORTH DAKOTA for the benefit of the Workmen's Compensation Fund of the State of North Dakota and Lucille E. Thompson, Respondent, v. COLUMBUS HALL ASSOCIATION, a dissolved corporation, T. F. Powers, Matt Camitsch, J. F. X. Conmy, George Laliberte and T. O. Smith, Trustees and Last Directors of said Columbus Hall Association, and Fargo Council Corporation, a corporation, successors in interest to said Columbus Hall Association, Appellants.

(27 SW2d 664)

276

Opinion filed May 26, 1947

*Wattam, Vogel & Vogel,* for appellants.

*Burnett, Bergesen, Haakenstad & Conmy* and *Marion J. Leslie,* for respondent.

280

MORRIS, J. This action is brought by the State of North Dakota for the benefit of the Workmen's Compensation Fund of the State and Lucille E. Thompson pursuant to the provi-

sions of § 65–0109, Rev Code ND 1943, to recover damages arising out of the injury of Lucille E. Thompson, an employee. The defendants appeal from a judgment entered pursuant to a verdict of a jury. The defendants moved for a directed verdict which was overruled by the trial court and, among several points raised on appeal, challenge the sufficiency of the evidence to sustain the verdict.

At the time the accident resulting in injuries to Mrs. Thompson occurred, the Columbus Hall Association, a corporation, was the owner of a building located at 222–224 Broadway, Fargo, North Dakota. It occupied the two upper floors of the building. The ground floor and the front portion of the basement were leased to Angerman Co., Inc. The Angerman Company subleased its portion of the basement to John C. Parker, Incorporated. Both the tenant and the subtenant engaged in the ladies ready-to-wear business. The Columbus Hall Association heated the building and in order to do so retained possession of the furnace room and coal bin in the rear of the basement. It employed one Sam Habercorn to care for the furnace. Lucille E. Thompson was secretary of John C. Parker, Inc., and in active management of the basement store. Her husband R. E. Thompson managed the Angerman Co. store on the main floor.

The front of the building faced east. Back of the building and between it and an alley had been constructed a loading platform consisting of a concrete slab thirty-four feet long. It extended, in width, from the rear of the building to the alley, a distance of eleven feet, and the top of the platform was about a foot above the alley pavement. The coal bin extended beneath the platform. A door opened from the main floor of the building into a small storm shed that was built on the platform. A doorway opened from the shed onto the platform. In front of this doorway and thirteen inches from it was a coal hole with a rectangular iron cover thirty inches long and twenty-four inches wide. This coal hole was used by the landlord in putting coal in the bin below. The steel cover was encased in a metal framework three inches wide into which the

cover fitted in a manner so that the metal parts were approximately level with the concrete platform. The cover weighed between twenty and twenty-five pounds.

Between 8 and 8:30 P.M. on the evening of April 4, 1944, Mrs. Thompson who had been assisting her husband with some work on the main floor walked out the rear door and fell through the coal hole into the bin below. It was dark outside. When she stepped into it the hole was open and the iron lid was down in the coal bin. The loading platform had been used continuously for more than seven years as a way over which merchandise was taken into the building. The iron lid had never become accidentally displaced. The only time any of the witnesses had seen the hole uncovered was when coal was being placed in the bin below. In arguing and briefing the case both parties assume that the lid had been removed and dropped into the bin by some unknown human agency.

The lid had a handle which, when not in use, dropped down so as to be level with the top of the lid. There were places provided where bolts could be put through to hold the lid but there were no bolts and there was no other means for fastening the lid down. An architect testified that it was the prevailing practice in the City of Fargo that where provisions are made for a coal chute, the lid of which becomes a part of the surface over which people may walk, to provide underneath locking devices. Neither of the Thompsons had ever examined the lid or were aware that there were no fasteners, hinges or locks thereon.

The tenants of the building used the platform as a loading dock for merchandise and to some extent as a way of ingress and egress. The landlord used it as a means of unloading coal. Thus all were tenants in common with the right to use it. The coal hole was used only for the convenience of the landlord and was under the exclusive control of it and its agents.

Mrs. Thompson was an employee of the subtenant of the basement and it was also her custom to assist her husband with his work in the store on the main floor. She was rightfully upon the premises and the landlord owed to her the same legal

duty as a landlord normally owes a tenant with respect to the safety of the premises. Tiffany, Landlord & Tenant § 98; Williams v. Dickson, 122 Minn 49, 141 NW 849; Fraser v. Kruger (CCA8th SD) 298 F 693.

In Kneeland v. Beare, 11 ND 233, 91 NW 56, which involved damages to a tenant's property, this Court held that:

"Where portions of a tenement building are let to tenants, and the landlord retains the exclusive possession and control of other portions, he is bound to exercise common care and prudence in the management and oversight of the portion of the building retained; and, if damages are sustained by a tenant, by reason of his failure to do so, the landlord is liable therefor."

The duty thus stated on the part of the landlord is general and is equally applicable with respect to personal injuries of the tenant or his employees. In the case under consideration the landlord used the platform in common with the tenant and his subtenant. The coal hole was devoted to the exclusive use of the landlord. It was, therefore, the duty of the landlord to exercise common or ordinary care for the protection and safety of the tenants and their employees. Am L Inst Restatement, Torts, Vol 2, § 361; Burke v. Hulett, 216 Ill 545, 75 NE 240; Anderson v. Winkle, 213 Minn 77, 5 NW2d 355; Farley v. Byers, 106 Minn 260, 118 NW 1023, 130 Am St Rep 613; Binnicker v. Adden, 204 SC 487, 30 SE2d 142; Lindsey v. Kentucky Development Co. 291 Ky 253, 163 SW2d 499; De Graf v. Anglo California Nat. Bank, 14 Cal2d 87, 92 P2d 899.

The first question that arises under the appellants' challenge to the sufficiency of the evidence is whether there is evidence sufficient to sustain a finding on the part of the jury that the defendant failed to use reasonable care in the construction and maintenance of the platform and coal hole under the circumstances here disclosed. The doorway leading from the storm shed onto the platform is thirty-six inches wide. The lid is thirteen inches from the threshold of the door and extends across and in front of the doorway, a distance of approximately twenty-three inches. Thus it is directly in the path of

anyone entering or leaving the main floor of the building through the rear entrance. That entrance was used frequently by employees of the tenants, by delivery men bringing goods to the stores, and occasionally by customers. The lid was so constructed that it could be raised with the use of the handle by anyone having the strength to raise it. Holes had been provided by the manufacturer for inserting bolts to hold it down. There were no bolts and the evidence does not show that any had ever been used. The lid, being rectangular in shape, could not only be raised up so as to open the hole but it could be removed entirely or could be dropped down through the hole into the coal bin below. In this instance the lid was found in the coal bin after the accident. It is the customary construction practice in Fargo to provide such lids with devices beneath so that they may be locked down and may not be removed from above.

When we consider the location of the coal hole in the direct path of traffic in and out of the rear door, together with the construction of the lid which permitted it to be removed entirely, and the failure of the landlord to cause it to be fastened down, we cannot say as a matter of law that reasonable care was used in its maintenance. It was a question for the jury to determine whether or not such care was used. By the verdict rendered the jury found that the landlord was negligent and the evidence is sufficient to sustain such findings.

The appellants urge that the proximate cause of the injury was the act of some unknown person in removing the lid and that regardless of the original negligence of the appellants the act of the unknown third person was the intervening proximate cause of the accident and that as a matter of law the appellants were entitled to a directed verdict.

In Johnson v. Minneapolis, St. P. & S. Ste. M. R. Co. 54 ND 351, 209 NW 786, this court said that: "Proximate cause is that cause which, as a natural and continuous sequence, unbroken by any controlling intervening cause, produces the injury, and without which it would not have occurred." Par. 4, Syllabus by the Court, 54 ND 351, 209 NW 786.

In Boss v. Northern P. R. Co. 2 ND 128, 49 NW 655, 33 Am St Rep 756, it was held that:

"The intervening cause, to be a shield to defendant, must be such as to actually break all connection of cause and effect between the negligent act and the injury. To be a superseding cause it must alone, and without the slightest aid from the act of defendant, produce the injury, and to be a responsible cause it must be the culpable act of a responsible party."

An intervening force is defined in American Law Institute, Restatement, Torts, Vol 2, § 441, as one that actively operates in producing harm after the negligent act or omission of the original actor has been committed. The determination of whether an intervening force is the efficient cause of an injury involves a number of considerations including whether or not the intervening cause is an extraordinary one or one which might be normally expected by a reasonable person in view of the situation existing at the time of its intervention. Herzberg v. White, 49 Ariz 313, 66 P2d 253. The foreseeability of the act of the unknown person in this case is the crucial point of the sufficiency of the evidence.

The appellants have cited Copeland v. Junkin, 198 Iowa 530, 199 NW 363, which bears a strong factual resemblance to the case at bar. In that case the plaintiff was injured by stepping into an opening in the sidewalk that was used to put coal into a cellar. The opening was provided with a cover which had been removed by an undisclosed person. The court held as a matter of law that the proximate cause of the injury was the absence of the cover due to the act of the third person and was not the lack or inadequacy of the means of fastening the cover in place. The Iowa Court distinguishes its former case of Calder v. Smalley, 66 Iowa 219, 23 NW 638, 55 Am Rep 270, by pointing out that in the former case the plaintiff was injured by stepping on an insecure lid while in Copeland v. Junkin the lid had been removed. The court in the former case, however, made this pertinent comment:

"Counsel for defendant insist that there is no evidence tending to show that the scuttle and covering were negligently con-

structed. We are not of that opinion. It was shown that the covering was without fastenings and subject to be removed by any person. The jury, we think, could well have found that it was negligent to leave the covering in that condition; that the care required by the law, for the safety of those who frequented the street demanded that such a trap should not be arranged for them in the sidewalk, which could be readily set by the mischievous and malicious, and would be set by the negligent, who should fail properly to replace the cover after using it."

We do not deem Copeland v. Junkin (Iowa) supra, to be controlling for two reasons. It does not appear in that case, as it does in this, that it was proper construction practice to provide fastenings for the cover nor does it appear that the court considered whether the removal of the cover by a third person was a cause of injury which the defendants might reasonably have anticipated.

An analogous question was before the court in Poole v. Tilford, 99 Or 585, 195 P 1114. In that case an elevator man fell down a dark elevator shaft because the car had been moved in his absence by an undisclosed person. The lock on the elevator door was defective thus permitting strangers to have access to the elevator car. On the question of intervening proximate cause, the court said:

"If an independent cause intervene between the negligence of the defendants and the injury, and such intervening cause and its consequences are such as, in the natural course of events, should have been anticipated or foreseen, then the defendants are liable. It was for the jury to say, from the facts and circumstances of the case, whether the defendants could have anticipated or foreseen that persons would naturally tamper with the elevator, if the door were left in a condition to be easily opened, and thereby arrange a dangerous trap for the operator."

The following cases, which leave to the jury the question of whether the original wrong-doer should have anticipated the probable injurious consequence of his act or omission, are in point: Lane v. Atlantic Works, 111 Mass 136; Simmons v. Anderson, 177 Wash 591, 32 P2d 1005; Colorado Mortg. & Invest.

Co. v. Rees, 21 Colo 435, 42 P 42; Colorado Mortg. Invest. Co. v. Giacomini, 55 Colo 540, 136 P 1039, LRA1915B 364; Hull v. Bishop-Stoddard Cafeteria, 238 Iowa 650, 26 NW2d 429. See also Shearman & Redfield, Negligence Rev ed § 38.

In the case before us the coal hole opened into a concrete platform which abutted on a public alley. The hole was less than four feet from the alley and was readily accessible to passers-by or to children playing about the premises. It was located close to and in front of a doorway frequently used as a means of ingress and egress to and from the building. If for any reason the lid was left off the hole, the hazard was unquestionably great. Under these circumstances it was for the jury to say whether the defendants should have reasonably foreseen that someone might negligently or maliciously remove the unfastened lid and leave the hole an open pitfall.

One of the grounds presented in the district court in support of the motion for a directed verdict and urged on this appeal is that Mrs. Thompson was guilty of contributory negligence as a matter of law. In an action for personal injuries questions of negligence and contributory negligence are for the jury unless the evidence is such that but one conclusion can be drawn by reasonable minds. Pyke v. Jamestown, 15 ND 157, 107 NW 359; Carr v. Minneapolis, St. P. & S. Ste. M. R. Co. 16 ND 217, 112 NW 972; Solberg v. Schlosser, 20 ND 307, 127 NW 91, 30 LRA NS 1111; Jackson v. Grand Forks, 24 ND 601, 140 NW 718, 45 LRA NS 75; Williams v. Minneapolis, St. P. & S. Ste. M. R. Co. 57 ND 279, 221 NW 42; Axelson v. Jardine, 57 ND 524, 223 NW 32; Logan v. Schjeldahl, 66 ND 152, 262 NW 463; State ex rel. Brazerol v. Yellow Cab Co. 62 ND 733, 245 NW 382; Ferm v. Great Northern R. Co. 53 ND 543, 207 NW 39; Dougherty v. Davis, 48 ND 883, 187 NW 616; Farmers' Mercantile Co. v. Northern P. R. Co. 27 ND 302, 146 NW 550; Newton v. Gretter, 60 ND 635, 236 NW 254; Ziegler v. Ford Motor Co. 67 ND 286, 272 NW 743; Bagg v. Otter Tail Power Co. 70 ND 704, 297 NW 774; Leonard v. North Dakota Co-op. Wool Marketing Asso. 72 ND 310, 6 NW2d 576; Fagerlund v. Jensen, 74 ND 766, 24 NW2d 816.

The appellants cite Johnson v. Mau, 60 ND 757, 236 NW 472, wherein this court held that the testimony of the plaintiff established as a matter of law that his contributory negligence was the proximate cause of his injury. The plaintiff was injured by a fall down an elevator shaft in a garage while looking for water to put in the radiator of his car. The elevator was used to lift cars from the first to the second floor in the garage. The court reached the conclusion that:

"He went beyond the scope of his invitation when he started out to look for the water himself, and without making any inquiry or taking any precaution by the exercise of any of his faculties he stepped out into the darkness."

In this case the facts are far different. The plaintiff stepped from the light into darkness by means of a way that she and others commonly used and had theretofore always found a way of safety. In so doing she was not guilty of contributory negligence as a matter of law.

The appellants complain of the admission of testimony by an architect as to customary construction practice with reference to the fastening of such lids as that involved in this case. Whether or not the defendant was negligent in the maintenance of the coal hole and lid was primarily a question for the jury. Customary construction while not conclusive was a proper matter for the jury to consider and the admission of the testimony of a qualified witness with respect to such custom was not error. Jones, Evidence, 2d ed § 685; Wigmore, Evidence, 3d ed § 461.

Over the strenuous objection of the appellants the plaintiff was permitted to introduce in evidence the following ordinance of the City of Fargo:

"It shall be unlawful for any person in said city to leave or keep open, uncovered, or unguarded, any cellar door, pit, grating, or any vault or other subterranean passage opening from, into, or upon any street, alley, or sidewalk; nor shall it be lawful for any person to suffer any such cellar door or vault, grating, or other opening or place of a like nature connected with the premise owned or occupied by him or her, to remain

in an insecure or other unsafe condition, so that persons may fall into or be otherwise injured by the same."

The court instructed the jury that if they found that the Columbus Hall Association allowed the lid leading into the coal bin to remain in an insecure or other unsafe condition in violation of the ordinance then the defendants were prima facie negligent. The defendants and appellants specify as error on this appeal both the overruling of their objection to the admission of the ordinance in evidence and the court's instruction with reference thereto.

A careful reading of the ordinance discloses that it applies only to an opening "into, or upon any street, alley, or sidewalk;". It has no application to the coal hole in this case, which opened onto a private loading platform and not upon the alley. An ordinance identical in wording to the one under consideration is referred to in the opinion in Steinke v. Halvorson, 46 ND 10, 178 NW 964. That case involved an appeal from an order sustaining a demurrer to the complaint. The accident involved a door opening directly from the street into a basement entrance. The court there held that whether the ordinance was violated was a question of fact which the jury might consider and that if they determined that the ordinance was violated the defendants would be prima facie negligent. In the case before us, the opening is clearly one that does not come within the terms of the ordinance. It was error to admit the ordinance in evidence and instruct the jury with reference thereto.

The appellants specify as error, the overruling of their objections to certain questions pertaining to the attempted impeachment of appellants' witness Sam Habercorn. This witness testified that at the time of the accident he was employed as a janitor around the building of the Columbus Hall Association and that it was his job to fire the furnace. He never at any time removed the coal hole cover. The only time that he saw it removed was when coal was being put in. He was not working on the night of the accident. On cross-examination he was

asked if he remembered seeing Mrs. Thompson on crutches after she came back to the store several weeks after the accident, to which he replied that he saw her lots of times. He was then asked if he remembered that on one of those times Mr. and Mrs. Thompson were out back looking at the lid on the coal hole. He replied that he did not remember and denied that he was there on such an occasion. Counsel then said, "Now, just to refresh your memory on it, didn't you tell them something like this: 'It is too bad she got hurt. I told them lots of times they should fix that?'" His reply was, "I did not. I never told them that." On redirect examination Mrs. Thompson testified that after she came back to work she and Mr. Thompson went out onto the back platform. The witness Habercorn came down the alley and ". . . he made the statement that it was a shame I had been hurt; he had told them many times they should fix that." This testimony was corroborated by Mr. Thompson. The appellants' objections that no foundation was laid for the testimony, that it was an effort to impeach on a collateral matter and that it was hearsay were overruled. The fact that the testimony is hearsay does not necessarily mean that its reception was erroneous if it was otherwise properly impeaching. Wigmore, Evidence 3d ed § 1018. It is a general rule that the cross-examiner is bound by the answers that a witness makes to his irrelevant questions. State v. Ave, 74 ND 216, 21 NW2d 352; State v. Tucker, 58 ND 82, 224 NW 878; Jones, Evidence 2d ed § 2398. A witness may not be impeached by showing that he has made contradictory statements with respect to collateral matters. Schmidt v. Stone, 50 ND 91, 194 NW 917; Becker v. Cain, 8 ND 615, 80 NW 805; Commercial Secur. Co. v. Jack, 29 ND 67, 150 NW 460. The plaintiff argues that the statement denied by the witness was material and relevant to the issues and that it went to the question of knowledge and notice of the condition of the lid by the defendants and their agent Habercorn. An examination of the statement sought to be contradicted discloses that it is indefinite both with respect to time and subject matter. The witness was merely an employee.

Neither his authority nor responsibility with reference to the control and maintenance of the building was established. He told somebody lots of times that they should fix something. Whom he told, when, and what should be fixed is left to conjecture. If the witness Habercorn was testifying directly, the statement could not stand as against a proper objection or motion to strike. It, therefore, appears that the statement, standing as it does in this record, pertains to collateral matters and that to establish its relevancy would require assumptions which the testimony does not warrant. Without those assumptions the testimony is irrelevant and collateral. If the assumptions are supplied the effect of the testimony is to make the alleged statement of the witness substantive evidence tending to show negligence in the maintenance of the premises. As to the appellants, the statement is unsworn, purely hearsay and inadmissible. Hearsay evidence bolstered by assumptions cannot thus be indirectly introduced and given probative force. Schmidt v. Stone, 50 ND 91, 194 NW 917, supra; Materka v. Erie R. Co. 88 NJL 372, 95 A 612. The error thus committed, together with the erroneous admission of proof of the ordinance and the instruction of the jury thereon requires that a new trial be granted. It is so ordered.

CHRISTIANSON, Ch. J., BURKE, NUESSLE and BURR, JJ., concur.