BRAKENSIEK v. NICKLES.

4-9123                                    227 S. W. 2d 948

Opinion delivered March 20, 1950.

*Wils Davis* and *Cecil Nance,* for appellant.

*Hale & Fogelman,* for appellee.

MINOR W. MILLWEE, Justice. This is an appeal from a judgment in favor of appellee, Robert M. Nickles, in the sum of $2,650 for the death of his eighteen year old wife, who was electrocuted when she came in contact with an electric line maintained on appellant's premises.

Appellant, R. H. Brakensiek, owns and operates a plantation in Crittenden County. Appellee and his father were formerly tenants on appellant's farm. In 1943 appellant purchased some used material from a war prison camp for construction of an electric distribution system to his tenant houses. The Arkansas Power & Light Company maintained a line to appellant's house and headquarters buildings. The tenants did the actual work of constructing the lines from plantation headquarters to the several tenant houses, using the old wire and cross-arms mounted on small willow and sycamore poles about ten or twelve feet high. The line was insulated in some places and bare in others, and was served from the one meter at appellant's house. Appellant maintained the 110 volt line and collected a flat rate of $1.50 per

month from each of the tenant families occupying the fourteen houses connected with the line.

In June, 1947, appellee and his wife lived a short distance from the tenant house occupied by his parents. On the afternoon of June 23, 1947, appellee's wife, Dora M. Nickles, and her mother-in-law, Mrs. Lula Nickles, left the latter's home to go to appellee's home, using a path as a short-cut across appellant's field. In following the path it was necessary to cross a ditch about four feet deep, which ran from the highway west through the field. When the two women reached the ditch they discovered that it was flooded, as the result of a rain storm on the evening before, and they started up the bank of the ditch to a road. When they reached a point near the road the elder woman was walking below the bank of the ditch ahead of her daughter-in-law, who had stopped on the ditch bank to talk to some children playing nearby. Immediately after the elder Mrs. Nickles had walked under the sagging electric wire, she heard her daughter-in-law scream. When she looked back the younger woman was lying on the muddy ground on her back holding the bare electric wire with her hands and died shortly thereafter. A neighbor, who was attracted by the screams of the elder Mrs. Nickles, grabbed the wire at a point where it was insulated, breaking it in two pieces.

Appellant argues only two grounds for reversal. He first insists that a verdict should have been directed in his favor because the undisputed proof shows there was no negligence on his part. Witnesses for appellant testified that the line was caused to sag by being dislodged from a pole when a limb was blown from a tree to which the line was attached during a storm on the night before the tragedy. Appellant testified that he went to Memphis, Tennessee, on the morning after the storm and did not return until after Mrs. Nickles' death. Hence, it is argued that he had no knowledge or notice of the sagging condition of the wire and cannot be charged with failure to repair within a reasonable time. We do not agree that the evidence on this point is undisputed. One witness for appellee stated that the line had become dislodged from the pole near the point where Mrs. Nickles

was killed, and had been sagging within five feet of the ground for seven or eight days prior to her death. He also stated that the dislodged line was being supported by a board about ten feet long which was used as a prop during that time. Another witness stated that he noticed the same condition Friday before Monday when Mrs. Nickles was killed.

We have repeatedly held that it is the duty of persons or companies furnishing electricity to others to exercise ordinary care, in the construction of service lines, to see that they are installed in a reasonably safe manner, and to use due diligence to discover and repair defects therein, and that the duty is a continuing one. *Arkansas Light & Power Company* v. *Cullen,* 167 Ark. 379, 268 S. W. 12; *Arkansas Power & Light Company* v. *Bollen,* 199 Ark. 566, 134 S. W. 2d 585. In *Arkansas Gen. Utilities Co.* v. *Shipman,* 188 Ark. 580, 67 S. W. 2d 178, the court approved the following statement from Curtis on Electricity, 699:

"The duty of an electric company in reference to keeping its appliances in safe condition is a continuing one. Not only must it exercise a high degree of care in the original selection and installation of its electric apparatus, but thereafter it must use commensurate care to keep the same in a proper state of repair. The obligation of repairing defects does not mean merely that the company is required to remedy such defective conditions as are brought to its actual knowledge. The company is required to use active diligence to discover defects in its system. In other words, an electric company is bound to exercise due care in the inspection of its poles, wires, transformers and other appliances."

The evidence in the instant case was in conflict as to whether the sagging of the line resulted from the storm or from failure of appellant to properly construct, maintain, and repair the improvised system. If the jury believed appellee's witnesses it was warranted in concluding that appellant failed in his duty either to properly maintain the line or to repair it within a reasonable time after it was dislodged from the pole.

It is next contended that deceased was guilty of contributory negligence as a matter of law. Appellant argues that deceased knowingly chose a dangerous and untraveled way in going along the ditch bank; that she voluntarily took hold of the wire, knowing that it was charged with electricity; and that her own negligence was, therefore, the proximate cause of her injury and death. We think the issue of contributory negligence was properly submitted to the jury. The evidence does not show that deceased voluntarily took hold of the 110 volt line. In *Arkansas Light & Power Company* v. *Cullen, supra,* the deceased voluntarily grasped a 2300 volt line, but had reason to suppose that it was a house wire carrying only 210 volts, and we held that the question whether he was guilty of contributory negligence was properly submitted to the jury.

The test to be applied in determining whether deceased was guilty of contributory negligence is whether she exercised such care as a reasonably prudent person would exercise under the circumstances. In *Southwestern Gas & Elec. Co.* v. *Murdock,* 183 Ark. 565, 37 S. W. 2d 100, the court said:

"In determining whether an injured party was guilty of contributory negligence we simply inquire whether a person of ordinary prudence, without expert knowledge, would have acted as the injured party did. 20 C. J. 372; *Mo. & No. Ark. R. R. Co.* v. *Clayton,* 97 Ark. 347, 133 S. W. 1124."

Even if we assume that deceased voluntarily took hold of the wire, there is no proof that she had expert knowledge of electricity or appreciated the danger of contact with a 110 volt line under the conditions disclosed here.

The facts in the instant case are essentially different from those in *Gullett, Admx.* v. *Arkansas P. & L. Co.,* 208 Ark. 44, 184 S. W. 2d 819, relied on by appellant. The undisputed evidence in that case showed that deceased and a companion were in a boat in high water when they attempted to pass under a 13,000 volt high tension electric line with the lowest of three wires within 18 or 24 inches of the water; and that deceased appre-

ciated the danger of attempting to go under the line by lifting it with his boat paddle.

The trial court refused all ins*ructions offered by both sides, but fully instructed the jury on all issues. We have carefully examined the instructions given and find them at least as favorable to appellant as he was entitled under the law. The instructions given correctly covered the issues involved in appellant's offered instructions, and no error was committed in refusing any of them.

We conclude that the questions of appellant's negligence and the contributory negligence of the deceased were properly submitted to the jury and that the record is free from error.

Affirmed.