WILLIAM E. HAMILTON, A MINOR BY AND THROUGH HIS GUARDIAN AD LITEM, RALPH K. HAMILTON, APPELLANT, *v.* SOUTHERN NEVADA POWER COMPANY, A NEVADA CORPORATION, RESPONDENT.

No. 3785

August 31, 1954.                    273 P.2d 760.

*Charles E. Catt,* of Las Vegas, and *Melvin Belli,* of San Francisco, California, for Appellant.

*Morse & Graves,* of Las Vegas, for Respondent.

## OPINION

By the Court, BADT, J.:

This appeal challenges the propriety of the trial court's order under rule 41 (b) N. R. C. P.[1] granting defendant's motion for dismissal and discharging the jury on the ground that plaintiff was guilty of contributory negligence as a matter of law. We have concluded that the judgment must be affirmed.

Defendant power company installed its power line in what is referred to as a "dedicated alleyway" in the town of Goodsprings, Nevada. The poles were installed in the alley eighteen inches from the property line. An eight-foot crossarm, centered on the pole, resulted in a two and one half-foot overhang of the crossarm over the property line. The crossarm carried a high power tension line carrying 7,200 volts, which was set six inches in from the end of the crossarm so that the wire had an overhang of two feet over the property. The construction used was standard. Two other wires in the circuit likewise carried 7,200 volts. All were uninsulated. At a lower level on the poles was a secondary insulated system of 110-220 volt circuits serving the adjacent residences. Goodsprings is a small community, with some thirty to forty families. Although plaintiff and his family had lived in Goodsprings since 1941, they acquired the property in question in 1944. At that time

[1] "* * * After the plaintiff has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has failed to prove a sufficient case for the court or jury. * * *"

there was a well in the rear end of the lot, close to the alley line, from which water had been pumped to an old wooden storage tank near the house at the front of said lot. In 1945 plaintiff's father constructed a pumphouse over the well and installed upon the roof of the pumphouse and adjacent to the alley line a 1,000-gallon metal water tank. The alley edge of such water tank was directly under the wire in question and the roof of the tank was some thirteen feet below the wire. Plaintiff's father himself constructed the pumphouse and installed the tank, including installation of the necessary switches and making the connection to the defendant's secondary wires. The water pumped by electricity into the tank was used for household purposes and for irrigating a small garden and a number of fruit trees. This situation maintained from the time of the installation in 1945 to the time of plaintiff's injuries February 22, 1952. During that period most of the thirty to forty houses in Goodsprings had similar wells and from ten to fifteen were within a block of the Hamilton property. The other wells were of the same nature. Twenty-foot lengths of pipe carried the water to the surface and it was the custom when leaks developed in the pipes to remove and replace the same.

William Hamilton, then of the age of sixteen years and eleven months, was attending high school at Las Vegas some forty miles from Goodsprings and lived during the week at Las Vegas. At his father's request he came to Goodsprings over the week-end to aid in the removal of a corroded twenty-foot length of pipe. A school friend, Dick Barnes, accompanied him. They disconnected the pump from the pipe, raised the pipe out of the well by passing it up through a hole in the roof of the pumphouse alongside of the tank till the lower end of the pipe was permitted to rest on the pumphouse floor. They then went outside and plaintiff was told by his father to mount to the top of the tank. This he did and his father then climbed to the roof of the pumphouse. With this picture in mind—the father standing on the roof of the

pumphouse (some seven feet high) close to the tank, the boy standing on the metal roof of the tank (some five feet higher), the length of pipe protruding from the hole and extending alongside of the tank, with some seven feet of the pipe below the hole and resting upon the floor of the pumphouse and the high tension power line some six to eight feet above the boy's head and a few feet to his rear—what happened is told simply by the boy's father: "We both pulled the pipe straight up until it was clear of the platform * * * I started to move it over to the edge of the building, and the electricity hit us. * * *"

The method of removing the pipe through the hole in the roof of the pumphouse was the only one that could be used, as the pipe was too long to be passed through a door or window. It was the same method used by the other people of the community. Plaintiff and his father both knew that the wires were there but had paid little, if any, attention to them. Plaintiff's father testified that he didn't give a thought to any wires, nor did he notice how close they were. He was a chemist and a graduate of the University of Illinois. He had done the necessary electrical work, installing the switches for the pump, removing a switch from a neighboring shower house for the purpose and making the necessary connections to the defendant's secondary line. He had installed an electrical fence around the property for the purpose of keeping out livestock. The plaintiff had noticed the wires, knew they were there and knew that the power used in his family's house and in the pumphouse came from the pole supporting the wires. Plaintiff was, as noted, about sixteen years and eleven months old, a junior in high school and doing well in mathematics, science and chemistry. He engaged in track and other athletic sports. Appellant has presented no reason why plaintiff was not chargeable with the same degree of care for his own protection as any reasonably prudent person. The accident occurred about noon and there were no structures or natural objects obstructing a clear view of the wires,

which, as we have noted, were but six to eight feet above his head as he stood on the tank.

Section 6150, N.C.L.1929, requires that no person shall maintain any wire carrying more than 600 and less than 15,000 volts of electricity without causing the crossarm to which such wire is attached to be kept at all times painted a bright yellow color, or placing thereon an enameled sign in white letters on a green background in letters not less than three inches high the words "High Voltage." The instant crossarm carried no "High Voltage" sign and, although there is some dispute on the point, we think it likewise fairly appears that the crossarm was not painted yellow. Plaintiff's father had never conveyed to the power company any easement or right of way to maintain its power line over the premises.

At the close of the argument on the motion for nonsuit, the trial court said, among other things:

"The Court feels in this case, and can't help but come to the conclusion that the plaintiff's inattention to the wires overhead was a contributing cause of the accident, and that his negligence was so gross under the circumstances as to be negligence as a matter of law. Under the circumstances, the Court feels there is no issue to bring to the jury, and that the motion for dismissal should be granted."

There being at this point some question as to whether or not the fact was in evidence that the crossarm was not painted, plaintiff's counsel requested leave to recall one of defendant's employees to question him as to this fact, although it was his belief that the testimony was already in to that effect. The court then stated, in rejecting the offer of proof:

"It may be, and my decision is based primarily on the fact that there is contributory negligence as a matter of law, and the offer of proof for that reason is rejected at this time."

After further argument by plaintiff's counsel the court said:

"The Court disagrees with you, Mr. Belli. The Court

is interested in the boy. The plaintiff's contributory negligence as a matter of law, not the father's. He was on top of the roof. He could have seen the wires if he had exercised any care whatever. He no doubt had control of the guiding of the pipe while it was in the air. The father certainly didn't, down below, and the boy should have thought of his own safety. Those wires had been overhead for many years, and he played around there, grew up and knew they were there. Anybody with common sense knows that any electric wire around your property you should stay away from, particularly with a pipe. I don't see how the jury, following the instructions of the Court could find other than contributory negligence. And furthermore, the Court feels that the plaintiff's inattention was so gross as to constitute negligence as a matter of law."

Appellant relies on Konig v. N. C. O. Ry., 36 Nev. 181, 209, 135 P. 141; Smith v. Odd Fellows Bldg. Ass'n., 46 Nev. 48, 205 P. 796, 23 A.L.R. 38; City of Las Vegas v. Schultz, 59 Nev. 1, 83 P.2d 1040, and other authorities, to the effect that the question of plaintiff's contributory negligence is ordinarily a question of fact to be determined by the jury; that the mere tendency of the evidence to show contributory negligence or the mere raising of an inference of contributory negligence or the mere suspicion of contributory negligence arising from the plaintiff's case will not warrant the court in taking the case from the jury. This court however in Konig v. N. C. O. Ry., supra, and Smith v. Odd Fellows Bldg. Ass'n. supra, has recognized that the rule is otherwise if the inference of negligence on the part of the plaintiff is "so strong as to be unavoidable and conclusive." [36 Nev. 181, 135 P. 151.] Despite the fact that the evidence does not support the trial court's finding that plaintiff "had control of the guiding of the pipe while it was in the air," that is, after it was entirely out of the hole in the roof, it is nevertheless the fact that plaintiff, standing on the tank, with the wire in plain view six to eight feet over his head, helped pull the pipe

through the roof into such proximity to the wire that the contact resulted.

Both appellant and respondent have cited and discussed in their briefs many cases decided by the courts of last resort throughout the nation dealing with the raising of a pipe or pole or other object or machinery that came into contact with a high power wire and resulted in death or serious injury. Some of these cases are fairly closely in point, some are distinguishable in greater or less degree. We feel that it would serve no purpose to discuss these cases or even to cite them. They are the subject of many annotations and are found in the usual recent texts. The reasoning behind most of the cases that have affirmed a nonsuit, dismissal or similar action at the conclusion of the plaintiff's case is that a person who voluntarily approaches into close proximity with a wire he knows to be there, or with a knowledge of whose presence he is chargeable, does so at his own risk. In somewhat colloquial language the learned trial judge came to the same conclusion expressed more formally by many of the courts, and somewhat after the expression found in Le Vonas v. Acme Paper Board Co., 184 Md. 16, 40 A.2d 43, 45, in which Delaplaine, J., speaking for a unanimous court, said:

"In accordance with these basic principles, the law does not require that a person, who maintains even so deadly an instrumentality as a high voltage electric wire, shall anticipate at his peril every possible fortuitous circumstance under which some person might make a contact with the wire, resulting in injury or death. Hayden v. Paramount Productions, 33 Cal.App.2d 287, 91 P.2d 231; 18 Am. Jur., Electricity, sec. 58. Electricity is now used so universally in city and country, in home and in business, for illumination and motive power, and for communication and transportation, that it is a matter of common knowledge that any line carrying electric current is dangerous to a more or less degree. The fact that a wire is charged with electric current is notice of danger, and any person mindful of his safety should

treat it with caution. When a person voluntarily touches, or approaches nearer than a reasonably prudent person would, an electric wire, which he knows, or which a person of ordinary knowledge and experience would have reason to believe, is sufficiently charged with electricity to be dangerous, and in consequence thereof he is injured, it will be assumed as a matter of law that his own negligence contributed to the accident. Potomac Edison Co. v. State, for Use of Hoffman, 168 Md. 156, 161, 177 A. 163, 166."

We think that appellant, who, with his father, raised the pipe into such close proximity with the wire that the contact was made, under the circumstances recited, comes within the rule enunciated. That his father was likewise negligent does not alter the situation.

Appellant emphasizes two points, defendant's construction of its line with an encroachment of two feet over the premises of plaintiff's father, and defendant's failure to comply with the statute requiring a warning sign on the crossarm or the painting of the crossarm with a bright yellow color. Assuming for the sake of argument that each of these two items constituted negligence on the part of the defendant, plaintiff's contributory negligence would still defeat a recovery. The merits of appellant's contentions as to the defendant's negligence in these respects need therefore not be discussed.

We conclude that the order of dismissal was proper and that such order and the order denying new trial must be affirmed with costs. It is so ordered.

EATHER, C. J., and MERRILL, J. concur.