Russell OLSON, Plaintiff and Respondent,

v.

CASS COUNTY ELECTRIC CO–OPERATIVE, INC., Defendant and Appellant.

No. 7770.

Supreme Court of North Dakota.

Jan. 28, 1959.

Johnson & Milloy, Wahpeton, for plaintiff and respondent.

Wattam, Vogel, Vogel, Bright & Peterson, Fargo, for defendant and appellant.

MORRIS, Judge.

The plaintiff brought this action to recover damages for personal injuries he received when the wires of an electric power line bearing 7,200 volts of electricity fell on a farm machine that he was operating under the power line on July 24, 1957. He alleges that this line, which was owned and operated by the defendant, was maintained in a negligent manner with the result that one of the poles broke causing live wires to fall and injure the plaintiff.

The defendant denies that it was negligent and alleges that plaintiff's own carelessness, negligence and want of ordinary care caused or contributed proximately to cause the plaintiff's injuries.

The case was tried before a judge and jury. After a motion by the defendant for a directed verdict had been denied a verdict was rendered for the plaintiff. The defendant made a motion for judgment notwithstanding the verdict which was also denied. The defendant appeals from the judgment and from the order denying its motion for judgment notwithstanding the verdict.

The defendant's transmission line ran along the east edge of a section line roadway right of way. The direction of both the road and the line was north and south. The land on which the accident occurred was owned by Thea Paulson who had given the defendant a right of way easement for the construction of its line. The line was built in 1940 and in 1955 was moved 12 feet to the east to permit a widening of the road along the Paulson farm. The road improvement did not extend farther north than the Paulson farm and the poles beyond it had not been moved with the result that the line no longer ran straight. A 12 foot offset was created which necessitated the installation of guy wires on some poles.

At the time of the accident the Paulson farm was being operated by Erwin Johnson. The plaintiff had farmed in the neighborhood since 1941 and for some time had followed the practice of exchanging farm work with Johnson. On the evening of July 24, 1957 between 6 and 7 o'clock the plaintiff was cutting a swath around a field of wheat with a 14 foot self-propelled swather. Grain had been planted around the guy wires and up to the poles. He had traversed the south side of the field from east to west and turned north on the west side of the field along which ran the defendant's transmission line. He came to a pole and guy wire. He drove his machine under the guy wire and continued on north. He came to a second pole and guy wire and attempted to again drive his machine between the pole and guy wire but found that the reel on his swather would not pass under the wire. He noticed that the wire was slack. It was anchored in the ground some 18 or 20 feet straight east of the pole.

The swather was mounted on three wheels. There were two larger wheels, one at each end. These wheels, powered by a 14 horsepower motor, were operated through separate clutches and could be separately rotated in either direction with the result that each end of the swather could be moved forward or backward. Thus the guidance and maneuverability of the swather depended entirely upon the two end wheels. The operator of the machine was seated at the extreme left end over the iron frame immediately back of the reel. When operating the machine the left wheel would be below his left hand. The frame of the swather extended in a scalene triangle to the rear of the operator and attached to the vertex of that extension some three or four feet to the right and some distance to the rear of the left front wheel was the third wheel. This wheel only gave weight bearing stability to the swather. It was free running and attached to the frame by a free swinging pivoted housing. There was no steering or power apparatus attached to it. It merely followed the direction set by the two front wheels.

After the plaintiff had driven his swather up to the pole and ascertained that he could not continue because of the guy wire he backed up the left end of the swather about six feet, then backed the right end around using the left wheel as a pivot. He then drove forward, that is to the east, and turned to the left around the guy wire. He missed the guy wire with the left front wheel. The wheat was seeded right up to the wire and he followed it around until he faced west. Then he turned to the north again. During this last maneuver the third wheel somehow came in contact with the guy wire. He did not see it strike the wire. He felt a bump, heard a crack as the pole broke. The transmission wires came down on the plaintiff and he was severely shocked and burned. After receiving two shocks while on the machine he was finally able to get off and get away. The swather continued north for a short distance and stalled in the roadway ditch. It was raining slightly at the time and after the plaintiff reached the ground he received three more shocks from electricity that pervaded the surrounding area. The plaintiff knew that the pole supported a high tension electric line.

■ Under the pleadings and the instructions of the court there were two primary issues to consider, first whether the defendant was guilty of negligence which was a proximate cause of plaintiff's injury, and second whether the plaintiff was guilty of negligence that contributed proximately to his injury. The rule is firmly established in this state that negligence, whether contributory or primary, is a question of fact for the jury unless the evidence is such that reasonable minds can draw but one conclusion therefrom. Huus v. Ringo, 76 N.D. 763, 39 N.W.2d 505; Bagg v. Otter Tail Power Co., 70 N.D. 704, 297 N.W. 774; Leonard v. North Dakota Co-op. Wool Marketing Associa-

tion, 72 N.D. 310, 6 N.W.2d 576; Pachl v. Officer, 79 N.D. 143, 54 N.W.2d 883.

■ We would point out with respect to the defendant's appeal from the order denying its motion for judgment notwithstanding the verdict that such a motion should not be granted unless the moving party is entitled to judgment on the merits as a matter of law. Aetna Indemnity Co. v. Schroeder, 12 N.D. 110, 95 N.W. 436; First State Bank of Eckman v. Kelly, 30 N.D. 84, 152 N.W. 125, Ann.Cas.1917D, 1044; Armstrong v. McDonald, 72 N.D. 28, 4 N.W.2d 191; Westerso v. City of Williston, 77 N.D. 251, 42 N.W.2d 429.

■ The jury having rendered a verdict for the plaintiff must have first determined that there was negligence on the part of the defendant that was a proximate cause of the accident and ensuing injury. The defendant challenges that determination and asserts that the evidence is insufficient as a matter of law to support it. While a distributor of high voltage electricity is not an insurer it does have a duty in erecting and maintaining its transmission lines to exercise care commensurate with the dangers involved. Keep v. Otter Tail Power Co., 201 Minn. 475, 277 N.W. 213; Greenwald v. Northern States Power Co., 226 Minn. 216, 32 N.W.2d 320; Polk v. City of Los Angeles, 26 Cal.2d 519, 159 P.2d 931; 18 Am.Jur., Electricity, Sec. 48. Care commensurate with the danger involved includes reasonable inspection. Polk v. City of Los Angeles, supra; Holmes v. Southern California Edison Co., 78 Cal.App.2d 43, 177 P.2d 32; Vannett v. Michigan Public Service Co., 289 Mich. 212, 286 N.W. 216; Dansbery v. Northern States Power Co., 188 Wis. 586, 206 N.W. 882. The duty to inspect is not confined to areas of dense population but applies as well to transmission lines over agricultural land. Howell v. San Joaquin Light & Power Corporation, 87 Cal.App. 44, 261 P. 1107.

■ The evidence shows that the pole that broke was thirty feet three inches in length. It was set five and one-half feet in the ground. The butt of the pole had been treated with a preservative. The pole broke between ten and eleven feet from the top. The distance to the next pole was three hundred seventy-five feet to the south and three hundred thirty-seven feet to the north. The pole was of western red cedar. At the point where it broke it had originally been over six inches in diameter. It had been affected with shell rot with the result that the sound wood had been reduced to a diameter of four to five inches at the point of breakage. The pole bore its weight of wires without showing any sign of weakness. Management of the defendant did not know that the pole had been weakened by shell rot. The line including the pole had not been inspected since the pole had been moved in May 1955. The defendant's manager testified that the defendant had no regular policy of inspection other than observation by the foreman, line superintendent and other employees as they went to and from their various jobs. He also said:

"If we feel that in one particular section we may possibly have bad poles, that there is some indication, then of course in those instances we just send out a crew and inspect from pole to pole."

From this evidence we conclude that it was within the province of the jury to determine that the pole was unsafe and that it was negligence on the part of the defendant not to have ascertained its condition and to have permitted it to remain unreplaced. It does not appear as a matter of law that the defendant was not negligent in this respect.

■ The next question is whether the jury was warranted in reaching the conclusion that defendant's negligence was a proximate cause of the plaintiff's injuries.

"Proximate cause is that cause which, as a natural and continuous se-

quence, unbroken by any controlling intervening cause, produces the injury, and without which it would not have occurred."

Johnson v. Minneapolis, St. P. & S. Ste. M. R. Co., 54 N.D. 351, 209 N.W. 786. Quoted in State v. Columbus Hall Association, 75 N.D. 275, 27 N.W.2d 664 and Froemke v. Otter Tail Power Co., 68 N.D. 7, 276 N.W. 146. The defendant refers to this quotation and argues that the sequence of defendant's negligence, if any, was broken by the intervening cause of the contact of the plaintiff's swather with the guy wire. Putting aside the fact that this alleged intervening cause was the result of plaintiff's own act and not the act of a third person we examine the evidence dealing directly with the negligence of the defendant as a proximate cause. The pole broke at a point between ten and eleven feet from its top where shell rot had permeated and weakened the outer layers of the wood, leaving four to five inches of sound stress-bearing material. The evidence indicated that the pole first gave way on its compression side which was the side next to the guy wire. The wire was fastened to the pole by a blot running through it about eighteen inches from the top and was anchored in the ground eighteen to twenty feet east of the base of the pole. An expert witness testified that had the pole been in its original state the force necessary to be applied to the guy wire to cause the break would have been seven hundred thirteen pounds on the compression side and nine hundred seventy-one pounds on the tension side. If the pole at the point of the break had five inches of solid wood the force necessary to break it would be two hundred sixty-one pounds on the compression side and three hundred fifty-two pounds on the tension side. If there was only four inches of solid wood these figures would have been reduced to one hundred thirty-five pounds on compression and one hundred eighty-one on tension. The weight of the third wheel as it stood on the ground with

the operator seated on the machine was three hundred five pounds.

This court has said:

"The intervening cause, to be a shield to defendant, must be such as to actually break all connection of cause and effect between the negligent act and the injury."

Boss v. Northern Pacific Railway Co., 2 N.D. 128, 49 N.W. 655, 658, 33 Am.St.Rep. 756. The jury might well have found that the contact of the third wheel of the swather with the guy wire was not such a cause. We reach the conclusion that whether or not defendant's negligence was a proximate cause of the injury was a question of fact for the jury with the determination of which this court will not interfere.

▬ We now come to the final question of whether the plaintiff was guilty of such contributory negligence as would bar his recovery as a matter of law. In this state contributory negligence is an affirmative defense. Carr and Erickson v. Minneapolis, St. Paul & S. Ste. M. R. Co., 16 N.D. 217, 112 N.W. 972; Welch v. Fargo & Moorhead Street Ry. Co., 24 N.D. 463, 140 N.W. 680; Ignatowitch v. McLaughlin, 66 N.D. 132, 262 N.W. 352; Loveland v. Nieters, 79 N.D. 1, 54 N.W.2d 533. The standard to be used in determining whether or not a party has been guilty of such contributory negligence as will defeat his recovery is whether his actions were those of an ordinarily prudent person in the same circumstances and in the same position. Umland v. Frendberg, N.D., 63 N.W. 2d 295; Bagg v. Otter Tail Power Co., 70 N.D. 704, 297 N.W. 774; Heckman v. Evenson, 7 N.D. 173, 73 N.W. 427.

"The burden of establishing the plaintiff's contributory negligence rests upon the defendant." Restatement of the Law, Torts, Sec. 477.

See also Ekren v. Minneapolis, St. Paul & S. Ste. M. R. Co., N.D., 61 N.W.2d 193.

The briefs cite no case exactly in point on the question of contributory negligence and our extensive research has disclosed none. There are, however, a number of cases where facts similar at least in part have been considered in connection with the sufficiency of the evidence to support a verdict for the plaintiff based upon injury or death resulting from electric shock.

In Howell v. San Joaquin Light & Power Corporation, 87 Cal.App. 44, 261 P. 1107 the defendant negligently permitted its highly charged wire to sag from approximately 23 feet to 19 feet above agricultural land. A worker was electrocuted when a portion of a pipeline he was removing from the ground came in contact with the uninsulated wire above him. The question of whether he was guilty of contributory negligence was held to be for the jury.

In Satterberg v. Pacific Gas & Electric Co., 58 Cal.App.2d 296, 136 P.2d 43, a farmer was injured when his plow came in contact with an electrically charged wire extending from an electric transmission line pole or with an iron pipe to which the wire was attached. The farmer's contributory negligence was held to be a question for the jury.

In Sauer v. Rural Co-op. Power Association of Maple Lake, 225 Minn. 356, 31 N.W.2d 15, it was held that contributory negligence of a decedent who was electrocuted when with a long-handled rake he pulled from the side of his house a burning telephone wire which had become charged with high voltage by the falling of a lightning struck power line across the telephone line was for the jury. He was killed when the wire on which he was pulling broke and fell across his shoulders.

In Card v. Wenatchee Valley Gas & Elec. Co., 77 Wash. 564, 137 P. 1047, the defendant maintained a high tension wire 17 feet above irrigated land. In working on an irrigation flume a worker who had occupied the land for about three years was killed when he inadvertently brought an iron pipe in contact with the uninsulated wire above. It was argued that the deceased was negligent in allowing the pipe in his hands to come in contact with the wire. The court held that his contributory negligence could not be determined as a matter of law but was a question for the jury.

Scott v. Pacific Power & Light Co., 178 Wash. 647, 35 P.2d 749, 755 involved the alleged contributory negligence of the plaintiff who was injured as the result of his bringing an iron pole which he was removing from the roof of the building into contact with or near to a high voltage distributing electric line of the defendant. In holding the question of contributory negligence to be for the jury the court said:

"In determining the question of contributory negligence, due care or ordinary prudence under the circumstances is the only test. Helliesen v. Seattle Elec. Co., 56 Wash. 278, 105 P. 458; North Coast Power Co. v. Cowlitz, C. & C. Ry., 108 Wash. 591, 185 P. 615. The existence of contributory negligence must be judged by respondent's condition and surroundings at the time of the accident and whether under the circumstances he acted as a reasonably prudent man would have done.

" 'After an accident happens, it is always easy to see many ways by which it could have been avoided, but such considerations do not usually afford a correct test of negligence. A victim of an accident is entitled to have his conduct judged by the circumstances surrounding him at the time of the accident by the conditions as they appeared to one in his then situation, and, if his conduct when so judged appears to be that of a reasonably prudent person, he cannot be said to be guilty of negligence.' Hull v. Seattle, Renton & Southern R. Co., 60 Wash. 162, 110 P. 804, 806."

Among other cases lending support to the plaintiff's contention that he is not barred as a matter of law from recovering because of contributory negligence we find the following: Royal Indemnity Co. v. Midland Counties Public Service Corporation, 42 Cal.App. 628, 183 P. 960; Green River Rural Electric Co-op. Corporation v. Blandford, 306 Ky. 125, 206 S.W.2d 475; Brakensiek v. Nickles, 216 Ark. 889, 227 S.W.2d 948, 34 A.L.R.2d 94; Wolfinger v. Shaw, 138 Neb. 229, 292 N.W. 731; Toney v. Interstate Power Co., 180 Iowa 1362, 163 N.W. 394; Oesterreich v. Claas, 237 Wis. 343, 295 N.W. 766, 134 A.L.R. 499.

We have also considered a number of cases where a person was killed or injured as a result of touching highly charged electric wires with pipes, rods, poles or other wires and was held to be guilty of contributory negligence precluding recovery. See Rank v. Metropolitan Edison Company, 370 Pa. 107, 87 A.2d 198, 55 A.L.R.2d 119; Hamilton v. Southern Nevada Power Co., 70 Nev. 472, 273 P.2d 760; Benard v. Vorlander, 87 Cal.App.2d 436, 197 P.2d 42; Jackson v. Mountain Utilities Corporation, 128 Colo. 477, 263 P.2d 812; Bockman v. Mitchell Brothers Truck Lines, Or., 320 P.2d 266; Watson v. Virginia Electric and Power Company, 199 Va. 570, 100 S.E. 2d 774; Vaught's Administratrix v. Kentucky. Utilities Company, Ky., 296 S.W.2d 459. In these cases the danger was obvious and in most of them the negligence was flagrant.

■ This case is distinguishable from those wherein the injured person intentionally touched an electric high voltage wire with his body or with an instrument that proved to be a conductor of electricity. It is also distinguishable from cases holding the plaintiff to be contributorily negligent where there was obvious peril closely associated with the acts of the plaintiff although the touching was accidental. In this case the plaintiff was pursuing his regular activity of swathing wheat in a normally safe manner. He knew that the pole sustained the wires of a transmission line but did not know of its defect. He had observed that the guy wire was slack but that fact was no notice of the weakness of the structure but rather the opposite for the line was upheld by the pole, not by the wire. The weakness of the pole was not so obvious as to attract the attention of a casual observer engaged in the operation of farm machinery as was the plaintiff; yet that weakness constituted the chief and proximate danger inherent in the situation. The defendant's easement was for the erection and maintenance of an electric transmission or distribution system. The land around and under it was available for farming and was being farmed by the tenant of the landowner. The wheat grew close to the guy wire which necessitated the close approach of the swather. The plaintiff did not intend to strike the wire and did not know that his machine had come in contact with it until he felt a bump and heard the crack of the pole. The transmission wires immediately fell upon him and he had no opportunity for escape without injury. The striking of that wire was not an intentional or deliberate act on the part of the plaintiff. Rather it was the accidental result of his acts in operating the swather and although it was one of a series of events that resulted in his injury those events included the breaking of the weakened pole. Under all of the circumstances. we cannot say as a matter of law that the plaintiff's operation of the swather was negligent. We therefore hold that the question of his negligence was one to be determined by the jury. The verdict must stand. The judgment appealed from is affirmed.

SATHRE, C. J., and BURKE, J., concur.

TEIGEN, J., did not participate.