SUMNER v. EASTERN MICHIGAN EDISON CO.

1. ELECTRICITY—NEGLIGENCE—EVIDENCE.

Testimony that defendant's arc light had remained from seven to fifteen years without any change in the rope by which it hung, that a part of the rope remained attached to the fallen light, and its normal life was only five to seven years, though contradicted by defendants' witnesses, who gave evidence tending to establish the claim that the rope was sound and had been detached from the pole by some trespasser, *held*, to raise an issue of fact for the jury upon the alleged negligence of defendant corporation, resulting in injury to plaintiff's team and harness.[1]

2. SAME—INSPECTION—PLEADING—DECLARATION.

Though plaintiff's declaration did not charge want of inspection or negligence in inspecting the arc light, but merely averred that the defendant wrongfully omitted to have its light so maintained that it would not descend, and to have the equipment for holding the lamp in mid air kept in good condition, etc., the trial court was not in error in charging that if the rope parted, had become so old and worn out that it broke from the weight of the lamp, plaintiff could recover, but if the accident was due to the breaking of the rope, defendant was liable unless it had duly inspected the rope and found it sound.

3. SAME—NEW TRIAL.

*Held*, that the evidence supported the action of the trial court in declining to grant a new trial.

Error to Washtenaw; Kinne, J. Submitted November 24, 1914. (Docket No. 170.) Decided July 23, 1915.

Case by James B. Sumner against the Eastern Michigan Edison Company for injury to plaintiff's team

[1] As to liability for death or injury of traveler coming in contact with electric wires in highway, see notes in 31 L. R. A. 566; 22 L. R. A. (N. S.) 1169, 1 B. R. C. 797.

and harness. Judgment for plaintiff. Defendant brings error. Affirmed.

*Keena, Lightner, Oxtoby & Oxtoby*, for appellant.

*A. J. Sawyer* and *V. E. Van Ameringen*, for appellee.

McALVAY, J. Plaintiff brought suit against defendant to recover damages for injuries to his horses and harness caused by their coming in contact with one of defendant's arc lamps and the electrical connections therewith lying upon the highway along which they were passing. The trial resulted in a verdict for plaintiff, upon which a judgment was duly entered. Defendant has removed the case to this court for review upon a writ of error.

The material facts in the case are as follows: Plaintiff was engaged in the milk business at Ann Arbor. At 5:15 in the morning of December 25th one of his teams, with two of his employees, was being driven along South University avenue, when, turning into East University avenue, it ran into an arc lamp of defendant company, which, with its electrical connections, was lying in the highway on the ground, extinguished. The team became entangled in the live wires and was shocked, knocked down, and burned, and the harness injured.

Defendant company is a public service corporation furnishing electric street lighting in the city of Ann Arbor by a system of arc lights. One of its lamps was suspended at the street intersection in question in the customary manner upon a wire cable stretched between two poles, at the center of which, over the street, a pulley was clamped, through which ran a rope, one end of which was attached to the cut-out box over the arc lamp and the other end ran through a similar pulley fastened to the pole at the southeast

corner, thence down the pole, where the end of the rope, which had attached to it an iron ring, was hooked over an inverted iron step driven into the pole. By unhooking the rope from the step, the lamp could be lowered for cleaning and trimming, and raised again and held in position by hooking the ring in its place. The upper end of this rope was looped to a porcelain insulator on top of the cut-out box, to which the lamp was fastened, with an iron hook. The electricity was conducted through two wires leading from the poles to the cut-out box and then by two short wires to the lamp proper. The cut-out box and lamp together were about 3 feet long and weighed about 65 pounds. The rope suspending this weight was three-eighths inch woven cotton sash cord boiled in paraffin.

There is no dispute in this case but that plaintiff's property was injured, at the time and place claimed, by reason of coming in contact with the lamp and live wires. There is, however, a sharp dispute in the testimony as to what caused the lamp to fall.

The theory of plaintiff was that the rope broke and let the lamp fall to the ground. The two employees of plaintiff, the only eyewitnesses, who were in charge of the team and wagon at the time the injury to plaintiff's property occurred, gave testimony tending to show that the rope was broken above the lamp, and a short piece was still attached to it.

On the part of defendant there was testimony given by its employees who, at 10 o'clock that morning, replaced this lamp with another one, tending to show that this rope was not broken; that they found it sound and strong and that it was used later, and its theory was that the rope suspending the lamp did not break; that the lamp had been unhooked from the pole and let down into the street by a trespasser.

At the close of the testimony defendant's counsel moved for a directed verdict on the ground that the

testimony did not show any actionable negligence on its part. The court, in denying this motion, ruled as follows:

"The only matter I will submit to the jury will be the question whether, under the evidence, the defendant was guilty of negligence in the matter of this rope; that is, whether or not this accident was due to the interference of some third party or to the insufficiency of the rope. Unless there is some evidence tending to show and satisfy the jury that this rope parted while the lamp was hanging, there could be no recovery in this case. I will leave that to the jury and withdraw all other questions from the case."

Defendant excepted to the ruling of the court in denying its motion for a directed verdict and also to the ruling of the court that the question of the sufficiency of the rope would be submitted to the jury. After arguments of counsel in the case, it was submitted by the court to the jury in a very brief charge, as follows:

"I do not think, and I so instruct you, that there is any evidence of any negligence on the part of the defendant company, unless you find from the evidence that this accident was due to the natural parting of the rope. *That is, that the rope had become so old and so worn that it parted of its own volition,* or from the weight to which it was attached. Unless you so find, I think there should be no verdict for the plaintiff in this case.

"It was the duty of the defendant in this case to provide strong and sound rope and wire to securely hold the lamp in question, to furnish good pulleys properly secured, and to have the rope properly affixed to the rope (pole).

"The occurrence of the accident in question raises no presumption of defendant's negligence, but its liability depends upon *whether it exercised reasonableness in keeping the lamp properly secured and suspended;* and, where an electric light company maintains lamps upon the streets for the purpose of public lighting, it is under the duty of maintaining them in a safe con-

dition, and, if any injury occurs by the falling of a light through the negligence of the company, it will be liable therefor.

"If you find from the evidence that this accident was due to the misconduct or trespassing of a third party (that is to say, if you find from the evidence that some unknown, wanton, reckless, mischievous, or malicious person caused this accident as claimed by the defendant), then the plaintiff cannot recover in this action, and your verdict should be for the defendant. If, however, you find from the evidence that this accident was due and was caused by the natural parting of the rope from which the lamp was suspended, then I think the defendant would be liable, unless the defendant had duly inspected the rope and found it sound. Every one should have some sympathy for the misfortunes which have overtaken the plaintiff in this case, but you will bear in mind that the defendant is engaged in discharging a duty which is important to the public, and it should be fairly and honestly dealt with in your deliberations.

"If you find for the defendant, of course your verdict will be no cause of action. If you find for the plaintiff, I think, perhaps, there is no very serious dispute about the amount which he would be entitled to recover. It would include injury to the two horses, the cost of repairing the harness, and the amount for which he is liable to the surgeon. Those amounts you should include if you find for the plaintiff. If you find for the defendant you will find no cause for action."

The jury returned a verdict for plaintiff in the sum of $300. A motion for a new trial was made by defendant and denied by the court.

We will consider the errors assigned and relied upon by appellant in the order presented in its brief. The first and second may be considered together.

(1) It is urged that the court erred in submitting to the jury the question of the sufficiency of the rope.

(2) That the court erred in submitting the question of the condition of the rope to the jury.

The testimony on the part of plaintiff, as already stated, tended to show that the rope which suspended

the lamp had broken a short distance above the place
where it was fastened to the cut-out box of the lamp,
and the broken end, about a foot or a foot and one-half
in length, was found immediately after the accident
attached to the cut-out box to which the lamp was
hooked. The testimony of witnesses for defendant
tended to show that the rope was intact at 10 o'clock
in the forenoon of the same day, when they replaced
the broken lamp with another, and that the ring on
the other end of the rope was detached from the hook
in the pole; that it was a good, sound rope which de-
fendant has used for the same purpose since that time;
that defendant's employees at once detached it from
the fallen lamp and attached it to the new one, where
it has since been used. In our opinion, to comply with
appellant's contention, it would have been necessary
for the court to weigh all the evidence in the case upon
the question as to whether this rope was broken with a
short piece left attached to the cut-out box, or whether
it was intact and the lamp had been dropped to the
ground by the rope being unhooked at the pole by
some unknown person. This clearly presented a dis-
puted question of fact. It is our opinion that this was
a question for the jury and not the court to determine,
and that the court was not in error in submitting it to
the jury under the instructions given in the charge.

The evidence in the case bearing upon the second
contention is much the same as that just considered.
To it may be added the statement already made that
the lamp had fallen upon the ground and either the
rope had broken or it had been let down by some un-
known means. From other evidence in the case a fair
inference could be drawn that this rope had been in
constant use for about 15 years. Defendant's fore-
man in charge of these electric lights in Ann Arbor,
whose duty it was to take care of and superintend
repairs on these lamps, testified that these ropes will

wear running over these pulleys and between the irons, and that the life of the same was from 5 to 7 years. It would not be an unreasonable conclusion to be drawn from the evidence in this case that the continuous use of a three-eighths inch woven cotton paraffined window sash cord for this purpose, exposed to wind and weather and bearing a continual strain of 65 pounds, would outlive its usefulness within that length of time. This was also a question of fact to be submitted to the jury.

Appellant's third contention relates to the matter of inspection. The only reference by the court to the matter of inspection is contained in the charge, as follows:

"If, however, you find from the evidence that this accident was due and was caused by the natural parting of the rope from which this lamp was suspended, then I think the defendant would be liable."

The question of fact as to whether this rope broke and let the lamp and its attachments fall to the ground was properly submitted to the jury and has been decided against the contention of appellant.

The excerpt just quoted from the charge of the court indicates that, in the opinion of the court, reasonable inspection of these appliances by the defendant was necessary in this case in order to relieve it from liability.

It is contended that plaintiff has not relied in his declaration upon the failure to properly inspect this rope, and therefore cannot recover on that ground. The declaration charges acts of negligence in that the defendant wrongfully omitted "to have said electric lamp so maintained and kept that it could not come down and become an instrument of danger to those who happened to pass under it," and, further, "to have the equipment for holding said electric lamp suspended in mid-air kept in good condition and repair so

that persons and animals could pass under it in safety and without risk of injury," and the case was tried upon these propositions. There is evidence in the record tending to show that no careful inspection of these ropes had been made by defendant's employees for the space of 12 or 15 years.

The court charged and instructed the jury that there was no evidence of any negligence on the part of defendant company, unless it found from the evidence that this accident was due to the natural parting of the rope:

"That is, that the rope had become so old and so worn that it parted of it own volition, or from the weight to which it was attached. Unless you so find, I think there should be no verdict for the plaintiff in this case."

The finding of the jury has already been stated, and, to find for the plaintiff, the jury could only do so by finding that the rope parted because of old age and wear and from the weight to which it was attached. This finding and verdict was warranted by the evidence in the case.

The plaintiff has not relied upon the want of inspection of these ropes by defendant in order to recover his damages for injury to his property, but the court has said to the jury:

"If, however, you find from the evidence that this accident was due and was caused by the natural parting of the rope from which the lamp was suspended, then I think the defendant would be liable, unless the defendant had duly inspected the rope and found it sound."

In other words, that a recent inspection of the rope and finding it sound, if shown by the defendant, would relieve it from liability in this case. The court was not in error in so charging the jury as to inspection.

There remains to be considered only the contention

of the defendant that the evidence was insufficient to support any verdict. This contention, with others, was the foundation for the motion for a new trial, which was denied. We have already said sufficient upon this claim and the others to show that, in our opinion, the evidence in the case was sufficient to warrant the verdict and judgment.

The judgment of the circuit court is therefore affirmed, with costs.

This opinion was prepared by Mr. Justice MCALVAY and concurred in by his Associates after his death.