## VANNETT *v.* MICHIGAN PUBLIC SERVICE CO.

1. ELECTRICITY—DUTY OF INSPECTION.

   An electric service company has the duty of making reasonable inspection of electrical apparatus.

2. PUBLIC SERVICE—PURPOSE OF INSPECTION—REPAIRS—PROXIMATE CAUSE.

   The purpose of inspection of apparatus by a public service company is to discover the need of repair and by repair prevent injury to persons and damage to property, and the duty is inclusive of wanton interference by human agency as well as wear and interference by the elements.

3. ELECTRICITY—DEFECTIVE APPLIANCES—INSPECTION.

   If a defective electric appliance is installed, or a sound appliance is defectively installed, or thereafter becomes defective through want of proper inspection or repair, the company is liable for its neglect of duty irrespective of its actual knowledge of the dangerous condition.

4. SAME—NEGLIGENCE—FAULTY INSTALLATION—INSPECTION.

   In action against electric company for negligent burning of plaintiff's hardware store and garage building and contents, record sustained finding of trial court that reasonable inspection would have revealed the dangerous condition caused by failure to install or maintain supporting brackets on building at end of 70 feet of wire from pole and the faulty installation of porcelain tubes running through wood sheathing and metal siding of building on adjacent property which was burned and set fire to plaintiff's property.

5. EVIDENCE—CONJECTURE.

   Judgments may not be founded upon conjecture and supposition.

(212)

6. SAME—CASE TRIED WITHOUT JURY—WEIGHT OF EVIDENCE.

In cases tried without a jury the trial judge is the trier of the facts and may give such weight to the testimony as in his opinion it is entitled to, hence where there was evidence to support trial court's finding that plaintiff's damage was due to defendant's negligence, rule that judgments may not be founded upon conjecture and supposition has no application.

7. APPEAL AND ERROR—FINDING OF COURT—PREPONDERANCE OF EVIDENCE.

A finding of the trial judge who tried case without a jury will not be reversed unless the evidence clearly preponderates in the opposite direction.

8. ELECTRICITY—NEGLIGENCE—DEFECTIVE WIRING—EVIDENCE.

In action against an electric service company for loss by fire of hardware store and garage building and contents, evidence supported trial court's finding that the fire was caused by defective wiring.

9. DAMAGES—BUILDINGS—FIRE—EVIDENCE.

In action against an electric service company for loss by fire of hardware store and garage building and contents, evidence *held,* to sustain judgment of $12,500 and interest.

Appeal from Oceana; Pugsley (Earl C.), J.   Submitted April 5, 1939.   (Docket No. 18, Calendar No. 40,398.)   Decided June 6, 1939.

Case by Ralph R. Vannett and wife against Michigan Public Service Company, a Michigan corporation, for damages for negligence in wiring a building, causing fire.   Judgment for plaintiffs.   Defendant appeals.   Affirmed.

*William J. Branstrom, J. Donald Murphy,* and *Frank E. Wetmore,* for plaintiffs.

*K. B. Matthews,* for defendant.

SHARPE, J.   Plaintiffs were the owners of a garage and hardware building in the village of New Era, Michigan, which was completely destroyed by fire

during the evening of October 25, 1936. Plaintiffs' building was located on the east side of Main street, facing west and immediately south of a building known as the Postema building. There was an 8- or 10-foot space between the two buildings. The fire started in the northeast part of the Postema building at about 9:30 p. m., and soon spread over and consumed both buildings.

The Postema building where the fire originated was a wood frame structure sheathed with one inch of hardwood covered with sheet metal. It was lighted by electricity furnished by the defendant company. Along the north side of the Postema building was a public street, intersecting at right angles with Main street and known as First street. Along this street, running east and west, were the service wires of defendant company. Approximately 140 feet east of the northwest corner of the Postema building was a transformer, and from this transformer, service wires ran westward and parallel to the Postema building to a pole about 8 feet north of the northwest corner of the Postema building. From the pole above mentioned, three No. 8 weather-proofed service wires of the defendant company ran to the side of the Postema building for a distance of approximately 70 feet to a point on the building just above the freight door. About 9:30 p. m., a fire started in the north rear portion of the Postema building, destroying that building and then spreading to and destroying the building of plaintiffs.

It is the claim of plaintiffs that defendant company's three service wires ran nearly parallel to the Postema building and then turned a right angle and ran through the wall of the building through small brittle porcelain tubes into and through the wood sheathing and metal siding; that at the point where the wires entered the building defendant company

had not installed a post or wall bracket to take up the strain and hold the weight of the service wires; that with the swaying of the wires the porcelain tubes rubbed and grated against the sheet metal siding which caused a "short circuiting," sending a heavy flow of electricity into the sheet metal covering the building; that the wires became hot and red at the point of contact; that the red-hot wires heated the sheet metal which in turn ignited the wood structure of the building; and that as a result of the faulty wiring, the two-story building and contents owned by plaintiffs were totally destroyed.

Defendant company admits that there was no proper inspection of the wiring since its installation, but contends that there was an entire lack of proof to show that improper installation or failure to inspect caused the fire; that the verdict was based upon conjecture; and that the damages allowed were excessive.

The cause was tried before the court without a jury and a judgment entered in favor of plaintiffs for the sum of $12,500 and interest in the sum of $1,092, said interest being computed from the date of the fire. The trial court based this judgment upon the following finding of facts: that there were no supporting brackets on the outside of the building; that there was no servicing or inspection of these wires by the defendant company since 1929; that the defendant company could inspect the equipment at any time during business hours; that the entire system was controlled and operated by defendant company except that defendant company delegated to Ben Postema the responsibility for winding the time clock which regulated certain street lights; that paragraph 7 of the declaration which contains the following allegations was established by a preponderance of the evidence:

"That at the point where said electric service wires entered said building defendant had not installed a post or wall bracket to take the strain and hold the weight of the long 70-foot span of service wires. That the wires ran directly through the wall through the afore-mentioned porcelain tubes. That the porcelain tubes ran through the wall from the north to the south. That the service wires in coming to said porcelain tubes from the west were forced to turn practically a square corner to enter said tubes.

"That the weight of the long span of service wires pulled the porcelain tubes westward and into contact with the metal sheeting covering said building. That with the swaying of the service wires said porcelain tubes rubbed and grated against said metal sheeting."

That the following allegations contained in paragraph 8 of the declaration were conclusively established:

"That at about 9 o'clock in the evening of Sunday, October 25, 1936, the service wires came into direct contact with the sheet metal covering of the building owned by Ben Postema at the point where said service wires entered said building, which caused a short circuiting at that point thus sending a heavy flow of current direct from the transformer into the sheet metal covering of said building. That the wires entering said building became hot and red resembling a neon sign. That the sheet metal covering of said building became hot and red at the point of contact with the wires and that it became charged with electricity throughout. That a fire was kindled by the red hot wires and sheet metal which transferred itself to the wood structure of the building."

That the value of the building was $7,500 and the contents of the garage was $5,000; and that plaintiffs were entitled to interest from the date of the fire.

In our discussion of this case we have in mind that reasonable inspection of electrical apparatus was

necessary. *Sumner* v. *Eastern Michigan Edison Co.*, 187 Mich. 169 (12 N. C. C. A. 84).

In *Mueller* v. *Citizens Telephone Co.*, 230 Mich. 173, we said:

"Reasonable supervision to maintain the integrity of the wire was required. The purpose of inspection is to discover need of repair and by repair prevent injury to persons and damage to property, and the duty is inclusive of wanton interference by human agency as well as wear and interference by the elements."

In Curtis on Electricity (1st Ed.), p. 702, § 477, it is said:

"If a defective electric appliance is installed, or a sound appliance is defectively installed, or thereafter becomes defective through want of proper inspection or repair, the company is liable for its neglect of duty irrespective of its actual knowledge of the dangerous conditions. An electric company cannot fail in its duty of construction, inspection, or repair; and then, when an injury has been sustained by reason of its failure, say as a matter of defense that it had no knowledge of the defect. To sustain such a defense would be to place a premium upon careless construction and maintenance."

The record sustains the finding of the trial court that any reasonable inspection would have revealed the dangerous condition caused by the failure to install or maintain supporting brackets and the faulty installation of porcelain tubes running through the wood sheathing and sheet metal siding of the building. But defendant company contends that its negligence, if any, was not the proximate cause of the fire; that there was no way possible for the wires to have contacted the sheet metal unless the porcelain tubes were broken; and that there is no evidence that any one of the three tubes was broken.

As we examine the record we find that there was testimony that the fire broke out through the building around and above the service wires; that all of the wires entering the building were the property of defendant company; that there had been no fire in the building on the day of the fire (Sunday); that sparks were seen emitting from the wires at the point of entry into the building; that there was a flickering red light around the wires; that the service wires became red hot; that the wires glowed red as they entered the building; and that the sheet metal of the building was charged with electricity.

The rule that judgments may not be founded upon conjecture and supposition as contended by defendant has no application to the facts in the case at bar. We are not unmindful that defendant company made use of expert testimony to show that the fire could not have happened in the manner contended by plaintiff. We have repeatedly said in cases tried without a jury that the trial judge is the trier of the facts and may give such weight to the testimony as in his opinion it is entitled to. In such cases we do not reverse unless the evidence clearly preponderates in the opposite direction.

In our opinion, there were facts and circumstances from which the trial court could conclude that the fire was caused by defective wiring. There was positive testimony that the metal sheeting was charged with electricity, and that this condition could not arise unless the porcelain tubes were broken enough to expose the wiring to a part of the building.

Defendant company also contends that the damages were excessive. The only evidence on damages was given by plaintiffs' witnesses. It is undisputed. The record sustains the finding of the trial court as to the amount of damages to the building and its contents.

The judgment of the trial court is affirmed, with costs to plaintiffs.

BUTZEL, C. J., and WIEST, BUSHNELL, POTTER, CHANDLER, NORTH, and McALLISTER, JJ., concurred.