LATHER, *for use and benefit of* EMPLOYERS MUTUAL CASU-
ALTY COMPANY, INC., *v.* MICHIGAN
PUBLIC SERVICE COMPANY.

1. WORKMEN'S COMPENSATION—SUBROGATION—CONTRIBUTORY NEG-
LIGENCE.

> The contributory negligence of an injured or deceased em-
> ployee bars recovery of employer or his insurer, as subrogee
> under the workmen's compensation act, against the third
> party whose negligence is claimed to have caused the in-
> juries (CL 1948, § 413.15).

2. ELECTRICITY—CONTRIBUTORY NEGLIGENCE—BURDEN OF PROOF—SUB-
ROGATION—WORKMEN'S COMPENSATION.

> Evidence that deceased employee who was working on roof
> of building within 3½ feet of defendant's high-tension wires
> when electrocuted and that deceased knew of his peril *held,*
> to have overcome presumption that he was free from con-
> tributory negligence in action by his employer, for the use
> and benefit of the workmen's compensation insurer, as sub-
> rogee, hence, plaintiff had burden of showing deceased free
> from contributory negligence.

3. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—BURDEN OF PROOF—
EVIDENCE.

> Finding of trial court in action by subrogee of claim for
> workmen's compensation that plaintiff had not sustained
> burden of proof that deceased employee was free from
> contributory negligence *held,* supported by evidence.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 58 Am Jur, Workmen's Compensation §§ 358, 360.
[1, 2] Right of employer or insurance carrier to subrogation to rights
of employee injured by third person's negligence.  19 ALR 782;
27 ALR 500; 37 ALR 844; 67 ALR 266; 88 ALR 678; 106 ALR
1053.
[2, 3] 38 Am Jur, Negligence §§ 286, 289, 293.
[4] 3 Am Jur, Appeal and Error § 896 *et seq.*

4. Appeal and Error—Nonjury Cases—Evidence.

The Supreme Court does not reverse the judgment of the trial court on issues of fact in a nonjury case unless the evidence clearly preponderates in the opposite direction.

Appeal from Grand Traverse; Campbell (Howard L.), J., presiding. Submitted January 15, 1952. (Docket No. 56, Calendar No. 45,337.) Decided April 7, 1952.

Action by Gordon Lather, for use and benefit of Employers Mutual Casualty Company, Inc., an Iowa corporation, against Michigan Public Service Company, a Michigan corporation, for workmen's compensation paid as result of electrocution of plaintiff's employee on defendant's wire. Judgment for defendant. Plaintiff appeals. Affirmed.

*Nuel N. Donley* (*Carroll C. Grigsby,* of counsel), for plaintiff.

*Schaberg & Schaberg,* for defendant.

Sharpe, J. This is an action seeking reimbursement of funeral expenses and compensation payments for which plaintiff insurance company is liable arising out of the accidental death of John Conway, who was electrocuted by contact with a high-tension wire while working on the roof of a building at Mancelona, Michigan, on July 24, 1946.

The essential facts are as follows: Victor Gordon Lather, Conway's employer, began this action as subrogee under the workmen's compensation act for the use and benefit of his workmen's compensation carrier, which paid funeral expenses and is paying an award to Conway's dependents. Mr. Lather is a building contractor. He was engaged to erect a 2-story garage building at the southwest corner of highway 131 and Maple street in the village of

Mancelona. The building is of cement blocks and frame construction with a flat roof.

The garage occupies the ground floor with an apartment upstairs. The building is approximately 54 feet square and has an over-all height of 21 feet. It faces east toward highway US-131 which runs northeast and southwest. Maple street, to the north of the building, runs due east and west.

The defendant corporation had main transmission lines running east and west along the south side of Maple street to a corner pole on highway US-131 from which 1 line ran west and another line ran north. The line consisted of 2 wires each of which carried 6,900 volts. The span from the corner pole to the next pole west was from 200 to 250 feet and the wires ran across the northwest corner of the building for a distance of about 15 feet. The wires were there prior to the erection of the building.

On April 22, 1946, defendant, at the owner's request, installed a meter and switch box on the first pole west of the rear of the building from which a cord was run to the building. Defendant's local manager read the meter about July 1, 1946. His office was about 3 or 4 blocks from the building. He saw the building in the course of its construction. On July 24, 1946, the walls were completed, the roof joists were up and the carpenters had started to lay the sheathing on the roof. Nick Kler, a fellow employee, was standing on the ground handing up the boards to Emery Evans who was standing on the second-floor joists. John Conway and Albert Harr had commenced to lay roof sheathing. Bennett Moore was also working either on the second floor or the roof. John Conway had just started the first row of boards and was seated on a board he had thrown across the joists with his feet hanging over the back wall. At this point defendant's high-tension wires extended over the roof of the building.

The lower wire was about 3½ feet above the roof and the upper wire was 5 or 6 feet above the roof. While the men were working, someone noticed that John Conway's hand was touching the lower strand of the high-tension wire.

During the trial of the cause, Victor Gordon Lather testified:

"*Q.* Now, you say you warned Mr. Conway to be careful about the hot wire?

"*A.* That's right.

"*Q.* When did you warn him?

"*A.* About 10 minutes before he was killed, and a number of times before.

"*Q.* And you warned him because you knew those wires were hot, didn't you?

"*A.* I knew it was a light line. I didn't know it was a high-tension line.

"*Q.* You told him it was dangerous, didn't you?

"*A.* That's right.

"*Q.* Who else did you warn about the wire besides Conway?

"*A.* As I recall, I had told everybody to stay away from it until it was changed."

Nicholas Kler, a witness for plaintiff, testified:

"I worked on the building during the time Conway was there. I was there the day before. I was up on top of the building the day before—day or 2 before. I was up as high as we could go. There wasn't no roof boards on or nothing—just the scaffolding. I warned Mr. Conway myself. I told him, 'Watch the wires.' I told him they were hot. That was just a day or 2, anyway, before the accident because we were working around there and we kept telling each other to 'just watch the wires,' that was all.

"*Q.* And he told you at the time you warned him that he knew the wire was hot and he was going to keep away from it?

"*A.* Yes. We talked back and forth about the wire, warning each other at different times."

Albert Harr, a witness for plaintiff, testified:

"On July 24, 1946, I was on the roof, working on the roof, getting ready to put the roof down. We had been setting the roof joists. Me and Mr. Conway was working right together at the time, and backward and forth along the roof, getting our first roof boards on at the time he was electrocuted. I was on the ladder near the second floor. I was going down the ladder, and Bennett Moore called to me that John was on the wire. I was going down the ladder to get some nails. We had run out of nails. I did not see the accident. I never seen it at all."

Emery Evans, a witness for plaintiff, testified:

"On that particular day, I was up on the joists, on this floor—the upper floor. Not on the roof, but on the joists, handing lumber up to the roof. I had taken the lumber from Nick Kler. I was on the second floor. There were boards across there, and I stood on the boards and he handed the boards up to me, and I handed them up to the top. Bennett Moore was on the receiving end of the boards that I took up. On the roof at this time—or about 4:30—were Bennett Moore and, of course, Conway; and I saw Albert Harr going down at that time. I didn't see this accident.

"*Q.* What was the first thing that you noticed, heard, or observed?

"*A.* Of course, I was shoving these boards up to Bennett Moore and he says, 'John is on the wire.' That is what I heard, 'John is on the wire.' That is all I knew about it."

Bennett Moore, a witness for plaintiff, testified:

"I was working on the top floor—on the roof, taking the boards up there.

"*Q.* There has been some testimony that you, Mr. Harr, and Mr. Conway were up there.

"*A.* That's right.

"*Q*. You have heard Mr. Harr's testimony that he at that time had gone down after more nails; is that right?

"*A*. That's right.

"*Q*. So that left you and Mr. Conway on the roof; is that right?

"*A*. That is true. At the time that Mr. Conway touched this wire, I was about 8 feet right behind him, with my back turned, taking the boards up through the floor from Emery Evans.

"*Q*. You didn't see Mr. Conway touch the wire, did you?

"*A*. I didn't see him at the time he hooked onto it. No.    *    *    *

"I had worked there on the roof of that building that whole day. I talked with Mr. Conway several times. I called his attention to those wires 4 or 5 different times during the day. He said, 'That's right; I know they are high-tension wires. If I get too close to them,' he said, 'you notify me.'

"*Q*. If he got too close, for you to notify him?

"*A*. That's right.

"*Q*. But he said he knew they were high-tension wires.

"*A*. That's right."

At the close of all testimony, defendant's counsel made a motion for a directed verdict. The trial court granted the motion and in an opinion stated as follows:

"I doubt very much, Mr. Donley, that the plaintiff has sustained the burden here in this case, even though it is under this particular statute. If a judgment were granted against the defendant, it would be on guess and conjecture, and that cannot be done.

"The case being submitted to the court without a jury, the court is the trier of the facts, and I cannot see any evidence in this case that would warrant a judgment in favor of plaintiff."

Plaintiff appeals and urges that defendant company was guilty of negligence in maintaining high-tension wires dangerously close to the roof of the building. In coming to our conclusions in this case we have in mind that defendant's lines were in Maple street prior to the beginning of the erection of the building; that there is no claim that the wires were defective; and that John Conway had been warned several times of the danger of working too close to the power lines.

Provision for actions of this character is found in CL 1948, § 413.15 (Stat Ann 1950 Rev § 17.189). In such actions the contributory negligence of the injured or deceased employee will bar recovery. See *Saur, for use and benefit of Great American Indemnity Co.,* v. *Rowland,* 272 Mich 520; *John W. Ladd Co.* v. *New York Central Railroad Co.,* 249 Mich 450; and *Burchard* v. *Otis Elevator Co.,* 261 Mich 142.

Plaintiff urges that there being no eyewitnesses to John Conway's actions immediately preceding his death he is presumed to have been in the exercise of due care and caution. In *Schillinger* v. *Wyman,* 331 Mich 160, plaintiff's decedent was killed while he was crossing a 4-lane highway. He successfully passed over 3 lanes of the highway and was struck by defendant's automobile while he was entering the fourth lane of the highway. We there said:

"If it were to be assumed, however, that defendant did not see decedent at all before the accident and that there were, accordingly, no surviving eyewitnesses whatsoever, the presumption of decedent's freedom from contributory negligence should nevertheless be deemed to have been overcome and rebutted by proofs of the physical facts in this case, which show decedent to have been guilty of contributory negligence as a matter of law. This, we think, follows from our holdings in *Elrich* v. *Schwaderer,* 251 Mich 33; *Waterstradt* v. *Lanyon Dock Co.,* 304

Mich 437; *Thomas* v. *New York Central Railroad Co.*, 267 Mich 396; *Rushford-Surine* v. *Grand Trunk Railway Co.*, 239 Mich 19; *Tomczyk* v. *Detroit, Grand Haven & M. R. Co.*, 267 Mich 474; *Pomeroy* v. *Dykema*, 256 Mich 100; *Russo* v. *City of Grand Rapids*, 255 Mich 474; and *Richardson* v. *Williams*, 249 Mich 350."

In our opinion the physical facts as hereinbefore related overcome the presumption that John Conway was free from contributory negligence. It follows that the burden of showing that he was not guilty of contributory negligence rests with plaintiff. The trial court, at the conclusion of all testimony, found that plaintiff had not sustained the burden of proof. In cases of this nature plaintiff must show that John Conway was free from contributory negligence; that defendant was negligent; and that the negligence of defendant was a proximate cause of John Conway's injury and death. For the purpose of this opinion we shall assume that the issues of negligence, contributory negligence and proximate cause involved questions of fact. In such cases the rule to be followed is stated in *Vannett* v. *Michigan Public Service Co.*, 289 Mich 212:

"We have repeatedly said in cases tried without a jury that the trial judge is the trier of the facts and may give such weight to the testimony as in his opinion it is entitled to. In such cases we do not reverse unless the evidence clearly preponderates in the opposite direction."

In our opinion there was ample testimony to support the court's findings of fact. The judgment is affirmed, with costs to defendant.

NORTH, C. J., and DETHMERS, BUTZEL, CARR, BUSHNELL, BOYLES, and REID, JJ., concurred.