*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ESTATE OF JEROME E. SIZICK.

JANET A. SIZICK,

        Petitioner-Appellee,

v

DEPARTMENT OF HEALTH AND HUMAN
SERVICES,

        Respondent-Appellant.

UNPUBLISHED
May 26, 2022

No. 357785
Saginaw Probate Court
LC No. 21-141789-PO

Before: MURRAY, P.J., and SAWYER and M. J. KELLY, JJ.

PER CURIAM.

Respondent, the Department of Health and Human Services (DHHS), appeals as of right the trial court's protective order, granting a transfer of Jerome E. Sizick's assets and income, an expansion of the power of attorney to implement the order, and equitable relief in favor of petitioner, Janet A. Sizick. On appeal, DHHS argues the trial court erred in granting the protective order because petitioner did not adequately establish the requirements under MCL 700.5401(3) to transfer nearly all of Sizick's assets and income for the support of petitioner. In addition, even to the extent the requirements were met, DHHS argues the trial court erred by failing to identify the transferred property, including the value, amount, reason for transfer, and Sizick's ownership interest, and improperly transferred unauthorized assets. We affirm in part, vacate in part, and remand for further proceedings.

## I. FACTS AND PROCEDURAL BACKGROUND

Sizick and petitioner have been married for about 61 years and resided in their marital home for about 45 years. In March 2021, Sizick was hospitalized for multiple health problems, including dementia, heart attack, seizures, and disorientation, which required continuous care in the hospital and nursing facility. In April 2021, Sizick became a resident patient at St. Francis Home. Petitioner alleged Sizick was wheelchair bound, unable to perform most of his activities

of daily living, and could no longer make informed decisions. Petitioner alleged there was a strong likelihood that Sizick would remain in a nursing facility for the remainder of his life. In May 2021, Sizick's skilled care nursing coverage through his health insurance plan was terminated, which required Sizick to pay out-of-pocket for his on-going care. On May 10, 2021, Sizick executed a durable power of attorney (DPOA), designating petitioner as his attorney-in-fact. In June 2021, petitioner applied for Medicaid on Sizick's behalf.

In addition, petitioner filed a petition for a protective order, requesting an order that would (1) transfer "property including all rights and interests of [Sizick] for the sole benefit and support of [petitioner;]" (2) provide petitioner, as Sizick's power of attorney, "expanded and comprehensive authority to take whatever steps are necessary in order to implement the transfer and assignment of all property and rights of [Sizick] to [petitioner;]" and (3) transfer about $2,000 of Sizick's monthly income to petitioner. At the time of filing, no determination as to Sizick's Medicaid application had been made because Sizick's pension and life insurance providers would not accept Sizick's DPOA in order to complete the application. Petitioner alleged Sizick had $2,887.20 in net monthly income and she received about $682 in net monthly income. Petitioner, who continued to reside in the marital home, alleged her monthly expenses were $3,426, which included home renovation costs that were necessary for petitioner to continue living independently in the marital home. Petitioner further alleged all of Sizick's assets were jointly owned with petitioner.

At the hearing, DHHS objected to the petition, stating the trial court did not have the authority to impoverish one spouse in order to maintain the lifestyle of the other spouse, and a Medicaid determination regarding eligibility and patient-pay amounts was required if it was going to be used as petitioner's basis for a support order. According to DHHS, a protective order could only transfer Sizick's assets and income, and therefore, Sizick's property needed to be separated, identified, and valued before it could be transferred. Further, DHHS stated the allegations in the petition, testimony by petitioner and Sizick's adult daughter,[1] and the guardian ad litem's (GAL) report did not establish clear and convincing evidence regarding Sizick's inability to manage his property. The trial court granted the protective order, transferring "100%" of Sizick and petitioner's "countable assets" "to petitioner as support for [petitioner,]" transferring $2,318 of Sizick's monthly income to petitioner, expanding the DPOA "authority to take whatever steps are necessary in order to transfer and assign all property and rights of [Sizick] to [petitioner,]" and terminating Sizick's elective share and statutory allowance against petitioner's estate. The trial court reasoned there was clear and convincing evidence of Sizick's inability to manage his property "from the testimony of the parties and GAL as to the condition of [Sizick]," and to require medical testimony would be a significant "burden" placed on individuals that "are already impoverished before they come in[.]"

## II. ANALYSIS

The trial court did not err in granting the protective order, finding petitioner adequately established the requirements under MCL 700.5401(3) to transfer nearly all of Sizick's assets and

---

[1] Sizick and petitioner's adult daughter is Julie K. Gries.

income for the support of petitioner. However, the trial court erred by failing to appropriately identify the transferred property and improperly transferred unauthorized assets.

## A. STANDARD OF REVIEW

Generally, this Court reviews de novo whether the trial court properly interpreted and applied the relevant statutes. *Mich Ass'n of Home Builders v Troy*, 504 Mich 204, 212; 934 NW2d 713 (2019). However, "appeals from a probate court decision are on the record, not de novo." *In re Temple Marital Trust*, 278 Mich App 122, 128; 748 NW2d 265 (2008). This Court's role in interpreting a statute is to ascertain the legislative intent that may reasonably be inferred from the express language in the statute. *Mich Ass'n of Home Builders*, 504 Mich at 212. If the statutory language is unambiguous, then the statute must be applied as written without judicial interpretation. *Id.* It is presumed "the Legislature intended the meaning it plainly expressed . . . ." *Cox v Hartman*, 322 Mich App 292, 298-299; 911 NW2d 219 (2017) (quotation marks and citation omitted). However, this Court reviews the trial court's factual findings for clear error and its dispositional rulings, including a decision to enter a protective order, for an abuse of discretion. *In re Estate of Vansach*, 324 Mich App 371, 385; 922 NW2d 136 (2018). "A finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *Id.* (quotation marks and citation omitted). "An abuse of discretion occurs when the court's decision falls outside the range of reasonable and principled outcomes." *Id.* (quotation marks and citation omitted). "A trial court may also abuse its discretion by failing to operate within the correct legal framework." *Id.*

## B. MCL 700.5401(3)

DHHS argues petitioner failed to establish the prerequisites for a protective order under MCL 700.5401(3) by clear and convincing evidence. As discussed below, we conclude that the probate court did not err in finding that clear and convincing evidence existed under subsection (a) but reluctantly conclude that the trial court's findings were incomplete under subsection (b).

In general, under Michigan's Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq.*, probate courts have the authority to enter protective orders to provide support for a community spouse whose spouse is institutionalized and receiving Medicaid benefits. *Vansach*, 324 Mich App at 382. However, this authority is constrained by MCL 700.5401(3), meaning a probate court may enter a protective order if it first determines both of the following are established by clear and convincing evidence:

> (a) The individual is unable to manage property and business affairs effectively for reasons such as mental illness, mental deficiency, physical illness or disability, chronic use of drugs, chronic intoxication, confinement, detention by a foreign power, or disappearance.
>
> (b) The individual has property that will be wasted or dissipated unless proper management is provided, or money is needed for the individual's support, care, and welfare or for those entitled to the individual's support, and that protection is necessary to obtain or provide money. [MCL 700.5401(3); *In re Vansach*, 324 Mich App at 392-393.]

"Evidence is clear and convincing when it produces a firm belief in the truth of the allegations that a party is attempting to establish." *In re Estate of Schroeder*, 335 Mich App 107, 114; 966 NW2d 209 (2020). "The standard has also been described as equating to evidence that is as clear, direct, weighty, and convincing as to enable a fact-finder, absent any hesitancy, to come to a definitive conclusion regarding the truth of the precise facts at issue." *Id.*

## C.  MCL 700.5401(3)(A)

Under this subsection, petitioner was required to present clear and convincing evidence that Sizick was unable to manage his property and business affairs effectively because of physical illness or disability.  MCL 700.5401(3)(a).  The probate court found that petitioner met this burden of proof through the testimony of petitioner, Gries and the GAL.  The Supreme Court has "repeatedly said in cases tried without a jury, that the trial judge is the trier of the facts and may give such weight to the testimony as in his opinion it is entitled to." *Vannett v Michigan Public Service Comm*, 289 Mich 212, 218; 286 NW 216 (1939).  A review of the record indicates petitioner testified that Sizick was unable to manage his property and business affairs because he suffered from dementia and other health problems.  Petitioner testified that Sizick's physical condition required continuous nursing care and prevented him from performing most of his daily activities and making informed decisions.  In addition, Sizick's court-appointed GAL reported he visited Sizick twice regarding the petition.  During the second visit, which occurred about one week after the first visit, the GAL stated "Sizick had no recollection of the first visit nor of the topic of the Petition[.]"  After repeating the information from the first visit, the GAL stated Sizick "did not fully grasp reassignment of income," but the second visit "ended with a momentary flash of foresight and grasp of reality" for Sizick when he indicated "I guess [petitioner] knows what she is doing" and stated he did not want to attend the court hearing.  Finally, Gries confirmed petitioner's testimony as to the condition of Sizick.

We conclude that the probate court did not clearly err in finding that the testimony of these three witnesses established by clear and convincing evidence that Sizick is unable to manage his property and business affairs because of mental deficiency and physical illness or disability.  The probate court was free to find this testimony sufficiently reliable, credible, and weighty, and that testimony left it undisputed that Sizick was in a nursing home suffering from dementia and other serious health issues.  See *Vansach*, 324 Mich App at 393 (concluding that the evidence, which showed that both men were institutionalized and suffered from dementia, satisfied MCL 700.5401(a)).  Although there was no independent medical testimony, none is *required* to meet the burden of proof.  *Dewey v Perkins*, 295 Mich 611, 616; 295 NW 333 (1940)("the weight to be given testimony does not depend on the number of witnesses").  And, no evidence was submitted to contradict petitioner and Gries's testimony about the current condition of Sizick.[2]

It is clear from the record that Sizick suffers from multiple health conditions that require continuous nursing care, making it unlikely that he will ever return to independent living.  In light

---

[2] Although it appears Sizick had sufficient mental capacity to execute a DPOA about three weeks before the petition was filed, and after he became a resident patient in the nursing care facility, as the probate court noted, the questioning about Sizick's condition related to the months after he signed the DPOA.

of the fact that witness testimony and the GAL's report were unchallenged regarding Sizick's health issues, the trial court did not err in determining Sizick was unable to manage his property or business affairs because of mental deficiency and physical illness under MCL 700.5401(3)(a).

### D. MCL 700.5401(3)(B)

Under subsection (b), petitioner was required to show that the incapacitated "individual has property that will be wasted or dissipated unless proper management is provided, or money is needed for the individual's support, care, and welfare or for those entitled to the individual's support, and that protection is necessary to obtain or provide money." MCL 700.5401(3)(b). The principal argument by DHHS is that under *Schroeder* the trial court erred in making the need determination in the absence of a final Medicaid determination. We reluctantly agree.

The probate court ordered that Sizick's interests in assets, which he owned jointly with petitioner, were to be transferred to petitioner for her care and support. These assets were valued at approximately $203,100. The probate court also ordered the transfer of $2,318 out of Sizick's $2,887.20 monthly income from a pension and social security benefits to petitioner. This transfer left Sizick with $570 a month to pay for his nursing care, which Sizick had been privately paying at a daily cost of $265. As the basis for making these transfers, the trial court reasoned that Sizick's property would be wasted or dissipated unless proper management was provided and that petitioner was in need of support. The trial court stated it considered the interests and needs of Sizick in deciding whether or how much to award petitioner. Additionally, the trial court stated it considered both spouses' needs and examined petitioner's monthly budget that showed expenses for necessary home renovations and funeral arrangements. The trial court further determined:

> [T]he award . . . will not impoverish the institutional spouse or the community spouse, and the Court is aware of what was told [to] the Court here today as to Medicaid. The award to the community spouse, hopefully, will be enough to have an appropriate standard of living that does not run out so the community spouse can remain in the community and not be required to be on state assistance.

The court granted the protective order before a determination regarding Sizick's Medicaid application was finalized. In *Schroeder* this Court concluded the trial court's consideration of Medicaid in assessing need when no Medicaid or patient-pay determinations had been made at the time of the protective order was "problematic[,]" stating:

> We understand and appreciate that patient-pay amounts can be estimated before the submission of a Medicaid application and a Medicaid-eligibility determination. But in assessing the "need" for money for a person's support and care under MCL 700.5401(3)(b) on the basis of Medicaid-related circumstances, there must actually be Medicaid determinations regarding eligibility and patient-pay amounts. Indeed, the *Vansach* panel stated that "[i]n cases in which an institutionalized spouse is receiving Medicaid benefits, weighing both spouses' needs and circumstances requires consideration of those needs and circumstances as they actually exist under Medicaid." [*Schroeder*, 335 Mich App at 123, quoting *Vansach*, 324 Mich App at 396.]

-5-

Despite *Schroeder*, petitioner maintains there is no statutory requirement that a Medicaid determination be made before a trial court can enter a protective order for support of a community spouse.[3] We agree that there is no cited authority for *Schroeder*'s assertion that "there must actually be a Medicaid determination regarding eligibility and patient-pay amounts," *Schroeder*, 335 Mich App at 123, and to the extent *Schroeder* relied on *Vansach*, *Vansach* explicitly stated its analysis was focused exclusively "on the issuance of orders for support under EPIC after an initial Medicaid eligibility determination has been made; we are not concerned with . . . attempts to use protective proceedings, *before* the initial Medicaid determination for Medicaid-planning purposes." *Vansach*, 324 Mich App at 394 n 14. Nevertheless, even though the *Vansach* Court explicitly disclaimed that it was addressing a situation where Medicaid had not yet been awarded, *Schroeder* extended that rationale to that precise situation, and that situation exists here as well. Accordingly, on the basis of *Schroeder*, which is binding on this panel, we must reverse the probate court's ruling on the basis of need, and remand for a redetermination.

## E. TRANSFERRED PROPERTY

DHHS also argues the trial court erred by failing to identify and value the assets being transferred in the protective order and improperly transferred assets that did not belong to Sizick.

To the extent the probate court is authorized to enter a protective order, under MCL 700.5401, MCL 700.5408 provides:

(1) If it is established in a proper proceeding that a basis exists as described in section 5401 for affecting an individual's property and business affairs, the court, without appointing a conservator, may authorize, direct, or ratify a transaction necessary or desirable to achieve a security, service, or care arrangement meeting the protected individual's foreseeable needs. Protective arrangements include, but are not limited to, payment, delivery, deposit, or retention of money or property; sale, mortgage, lease, or other transfer of property; entry into an annuity contract, contract for life care, deposit contract, or contract for training and education; or an addition to or establishment of a suitable trust.

(2) If it is established in a proper proceeding that a basis exists as described in section 5401 for affecting an individual's property and business affairs, the court, without appointing a conservator, may authorize, direct, or ratify a contract, trust, or other transaction relating to the protected individual's property and business

---

[3] Petitioner also asserts *Schroeder* should be disregarded because the petitioner-appellees in that case were unrepresented and did not submit briefs to support their positions. However, petitioner provides no further argument or authority in support of her request. Because a party "may not merely announce [their] position and leave it to this Court to discover and rationalize the basis for [their] claims, nor may [they] give only cursory treatment with little or no citation of supporting authority[,]" we consider petitioner's argument abandoned. *Bank of America, NA v Fidelity Nat Title Ins Co*, 316 Mich App 480, 517; 892 NW2d 467 (2016) (quotation marks and citation omitted).

affairs if the court determines that the transaction is in the protected individual's best interests. [MCL 700.5408(1) and (2) (footnote omitted).]

"[W]hen a probate court acts to transfer property upon satisfaction of the prerequisites in MCL 700.5401 relative to need, it is imperative for the court to identify the interests being transferred and the value of those interests." *Schroeder*, 335 Mich App at 125. "*Although there is no specific language in EPIC demanding that information*, when a court is examining the financial needs of spouses and orders asset transfers on the basis of those needs, a valuation of the assets or interests therein is an inescapable and necessary component of the analysis." *Id* (emphasis added).

A review of the record indicates the trial court ordered Sizick to transfer his assets and property owned jointly with petitioner. The trial court valued Sizick's countable assets to be approximately $203,100, which did not include the marital home or term life insurance. In the petition, petitioner claimed there was $44,000 in real property, $100,000 in personal property, and $5,000 in insurance. Beyond these conclusory assertions, there was little to no evidence supporting or identifying these countable assets, real property, and personal property. As a result, it is unclear what assets or property are included in trial court's "countable assets" calculation, whose ownership interest is included in the trial court's calculation or petition, and whether the trial court's order transferred property independently owned by petitioner. Therefore, to the extent the trial court on remand grants a new protective order, evidence should be presented regarding the ownership interest and value of the assets being transferred. Despite its acknowledgment that there is no statutory requirement to do so, the *Schroeder* Court held in almost identical circumstances that such findings are required. We are bound to follow that decision when presented with the same set of facts. MCR 7.215(J)(1).

## III. CONCLUSION

We affirm the trial court's order finding under MCL 700.5401(3)(a), vacate the finding under MCL 700.5401(3)(b), and remand to the trial court for further findings under subsection (b) and to identify the property being transferred under MCL 700.5408. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ David H. Sawyer
/s/ Michael J. Kelly